**PLAN EXHIBIT D**

**LUMMUS ASBESTOS PI TRUST AGREEMENT**

## ABB LUMMUS GLOBAL INC. 524(g) ASBESTOS PI TRUST AGREEMENT

This ABB LUMMUS GLOBAL INC. 524(g) ASBESTOS PI TRUST AGREEMENT (this "Lummus Asbestos PI Trust Agreement"), effective as of the Effective Date, is among ABB Lummus Global Inc., a Delaware corporation and the debtor and debtor-in-possession in case number 05-_____ in the United States Bankruptcy Court for the District of Delaware, as settlor (the "Debtor" or the "Settlor"), the Lummus Future Claimants' Representative, the Trust Advisory Committee and the Trustee identified on the signature page hereof and appointed pursuant to the Prepackaged Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code of ABB Lummus Global Inc., as the same may be amended, modified or supplemented from time to time (the "Plan"). All capitalized terms used herein but not otherwise defined shall have the respective meanings given to such terms in the Glossary of Terms for the Plan Documents Pursuant to the Prepackaged Plan of Reorganization of ABB Lummus Global Inc. (the "Glossary"), and such definitions are incorporated herein by reference. All capitalized terms not defined herein or in the Glossary, but defined in the Bankruptcy Code or Bankruptcy Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Bankruptcy Rules, and such definitions are incorporated herein by reference.

### RECITALS

WHEREAS, at the time of the entry of the order for relief in the Chapter 11 Case, the Debtor was named as a defendant in personal injury actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products; and

WHEREAS, the Debtor has reorganized under the provisions of Chapter 11 of the Bankruptcy Code in a case pending in the Bankruptcy Court, known as *In re ABB Lummus Global Inc.*, Case No. 05-_____; and

WHEREAS, the Plan, filed by the Debtor and supported, *inter alia*, by the Lummus Future Claimants' Representative and the CCC has been confirmed by the Court; and

WHEREAS, the Plan Documents provide, among other things, for the creation of the Lummus Asbestos PI Trust; and

WHEREAS, pursuant to the Plan, the Lummus Asbestos PI Trust is to use its assets and income to pay Lummus Asbestos PI Trust Claims as and to the extent provided for herein and in the Lummus TDP; and

WHEREAS, pursuant to the Plan, the Lummus Asbestos PI Trust is intended to qualify as a "qualified settlement fund" (a "QSF") within the meaning of Section 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended from time to time (the "IRC"); and

WHEREAS, it is the intent of the Settlor, the Trustees, the Lummus Future Claimants' Representative and the TAC that the Lummus Asbestos PI Trust be administered, maintained, and operated at all times as a qualified settlement fund through mechanisms that provide reasonable assurance that the Lummus Asbestos PI Trust will value, and be in a financial position to pay, all Lummus Asbestos PI Trust Claims that involve similar claims in substantially the same manner in strict compliance with the terms of the Plan, this Lummus Asbestos PI Trust Agreement and the Lummus TDP; and

WHEREAS, the Plan provides, among other things, for the complete treatment of all liabilities and obligations of the Debtor (among others) with respect to Lummus Asbestos PI Trust Claims; and

WHEREAS, the Court has determined that the Lummus Asbestos PI Trust and the Plan satisfy all the prerequisites for the injunctions provided for in the Plan, and such injunctions have been entered by the Court.

### PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and understandings contained herein, and subject to and on the terms and conditions herein set forth, the parties hereby agree as follows:

### ARTICLE I
### DEFINITIONS

1.1 **Definitions.** As used herein, the following capitalized terms shall have the respective meanings set forth below:

"ABB" has the meaning set forth in the Glossary.

"ABB Holdings" has the meaning set forth in the Glossary.

"ABB Oil & Gas" has the meaning set forth in the Glossary.

"ACC" has the meaning set forth in the Glossary.

"Additional Indemnitees" has the meaning set forth in the Glossary.

"Affiliate" has the meaning set forth in the Glossary.

"Asbestos Protected Party" has the meaning set forth in the Glossary.

"Bankruptcy Code" has the meaning set forth in the Glossary.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

"Bankruptcy Rules" has the meaning set forth in the Glossary.

"CCC" shall have the meaning set forth in the Glossary.

"Debtor" has the meaning set forth in the preamble.

"Eligible Depositories" has the meaning set forth in Section 4.2(h) herein.

"Entity" has the meaning set forth in the Glossary.

"Glossary" has the meaning set forth in the preamble.

"IRC" has the meaning set forth in the preamble.

"Lien" has the meaning set forth in the Glossary.

"Lummus Asbestos PI Trust" has the meaning set forth in the Glossary.

"Lummus Asbestos PI Trust Agreement" has the meaning set forth in the preamble.

"Lummus Asbestos PI Trust Assets" has the meaning set forth in the Glossary.

"Lummus Asbestos PI Trust Claims" has the meaning set forth in the Glossary.

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

"Lummus Asbestos PI Trust Expenses" has the meaning set forth in the Glossary.

"Lummus Future Claimants' Representative" or "Lummus FCR" has the meaning set forth in the Glossary.

"Lummus TDP" means the ABB Lummus Global Inc. 524(g) Asbestos PI Trust Distribution Procedures attached hereto as Exhibit A, as the same may be modified, amended or supplemented from time to time.

"Moody's" has the meaning set forth in the Glossary.

"Non-Debtor Affiliate" has the meaning set forth in the Glossary.

"Petition Date" has the meaning set forth in the Glossary.

"Plan" has the meaning set forth in the preamble.

"Plan Documents" has the meaning set forth in the Glossary.

"QSF" has the meaning set forth in the preamble.

"Reorganized Debtor" has the meaning set forth in the Glossary.

"Representatives" has the meaning set forth in the Glossary.

"S&P" has the meaning set forth in Section 4.2(b) herein.

"Settlor" has the meaning set forth in the preamble.

"Subsidiary" has the meaning set forth in the Glossary.

"TAC" has the meaning set forth in the Glossary.

"TDP Determined Claims" means Lummus Asbestos PI Trust Claims which qualify for distributions from the Lummus Asbestos PI Trust under the Lummus TDP.

"Termination Date" has the meaning set forth in Section 8.2(a) herein.

"Trust By-laws" means the ABB Lummus Global Inc. 524(g) Asbestos PI Trust By-laws to be adopted pursuant to Section 3.1(c)(viii) hereof, as the same may be modified, amended or supplemented from time to time.

## ARTICLE II
## AGREEMENT OF TRUST

2.1 **Creation and Name.** The Settlor hereby creates a trust known as the "ABB Lummus Global Inc. 524(g) Asbestos PI Trust" as a Delaware statutory trust, which is the Lummus Asbestos PI Trust to be created on the Effective Date pursuant to the Plan. The Trustees of the Lummus Asbestos PI Trust may transact the business and affairs of the Lummus Asbestos PI Trust in the name "Lummus Asbestos PI Trust" or "ABB Lummus Global Inc. 524(g) Asbestos PI Trust". Contemporaneously with the execution of this Lummus Asbestos PI Trust Agreement, the Settlor will file a Certificate of Trust for the creation of a statutory trust with the Secretary of State of Delaware.

## PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

2.2 **Purpose.** The purpose of the Lummus Asbestos PI Trust is to assume all Lummus Asbestos PI Trust Claims (whether now existing or arising at any time hereafter) and to use the Lummus Asbestos PI Trust Assets to pay holders of such Lummus Asbestos PI Trust Claims in accordance with this Lummus Asbestos PI Trust Agreement and the Lummus TDP, and in such a way that all holders of Lummus Asbestos PI Trust Claims that involve similar claims are treated in substantially the same manner and to otherwise comply in all respects with the requirements of a trust set forth in Section 524(g)(2)(B)(i) of the Bankruptcy Code. All Lummus Asbestos PI Trust Claims shall be processed, and liquidated and paid, if and to the extent entitled to payment, pursuant to this Lummus Asbestos PI Trust Agreement and the Lummus TDP.

2.3 **Transfer of Assets.** Pursuant to the Plan, the Debtor, ABB, ABB Holdings and ABB Oil & Gas will transfer, issue or assign, as appropriate, and deliver to the Lummus Asbestos PI Trust the ABB Consideration, at the time and in the manner contemplated by the Plan Documents, in each case free and clear of all Claims, Equity Interests, Encumbrances, and other interests of any Entity. The Settlor and any other party transferring any ABB Consideration to the Lummus Asbestos PI Trust shall execute and deliver, or cause to be executed and delivered, such documents as the Trustees may reasonably request from time to time to reflect the transfer, issuance, assignment and delivery, as applicable, of the ABB Consideration to the Lummus Asbestos PI Trust.

2.4 Acceptance of Assets and Assumption of Liabilities.

(a) In furtherance of the purposes of the Lummus Asbestos PI Trust, the Trustees, on behalf of the Lummus Asbestos PI Trust, hereby expressly accept the transfer, issuance, assignment and delivery, as applicable, to the Lummus Asbestos PI Trust of the ABB Consideration at the time and in the manner contemplated by the Plan Documents, in accordance with the terms of this Lummus Asbestos PI Trust Agreement.

(b) In furtherance of the purposes of the Lummus Asbestos PI Trust, the Trustees, on behalf of the Lummus Asbestos PI Trust, hereby expressly assume all Lummus Asbestos PI Trust Claims (whether now existing or arising at any time hereafter). The Lummus Asbestos PI Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Lummus Asbestos PI Trust Claims that the Debtor or any Asbestos Protected Party or any successors of the Debtor or any Asbestos Protected Party has or would have had under applicable law or under any agreement related thereto.

(c) Nothing in this Lummus Asbestos PI Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the injunctions issued in connection with the Plan or the Lummus Asbestos PI Trust's assumption of the Lummus Asbestos PI Trust Claims as provided therein.

## ARTICLE III
## POWERS AND TRUST ADMINISTRATION

3.1 **Powers.**

(a) Each Trustee is and shall act as a fiduciary to the Lummus Asbestos PI Trust in accordance with the provisions of this Lummus Asbestos PI Trust Agreement, the Plan, and Delaware law. The Trustees shall, at all times, administer the Lummus Asbestos PI Trust and the Lummus Asbestos PI Trust Assets in accordance with Section 2.2 of this Lummus Asbestos PI Trust Agreement. Subject to the limitations set forth in this Lummus Asbestos PI Trust Agreement and the Lummus TDP, the Trustees shall have the power to take any and all actions that, in the reasonable judgment of the Trustees, are necessary or proper to fulfill the purposes of the Lummus Asbestos PI Trust, including, without limitation, each power expressly granted in this Section 3.1, any power reasonably incidental thereto, and any statutory trust power now or hereafter permitted under the laws of the State of Delaware.

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

(b) Except as otherwise specified herein, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c) Without limiting the generality of Section 3.1(a) above, and except as limited below, the Trustees shall have the power to:

(i) Receive, hold, and manage the ABB Consideration and the Lummus Asbestos PI Trust Assets;

(ii) invest the monies and other assets held from time to time by the Lummus Asbestos PI Trust;

(iii) sell, transfer, or exchange any or all of the Lummus Asbestos PI Trust Assets at such prices and upon such terms as they may consider proper, consistent with the other terms of this Lummus Asbestos PI Trust Agreement;

(iv) enter into leasing and financing agreements with third parties to the extent such agreements are reasonably necessary to permit the Lummus Asbestos PI Trust to operate;

(v) pay liabilities and expenses of the Lummus Asbestos PI Trust, including, but not limited to Lummus Asbestos PI Trust Expenses;

(vi) establish such funds, reserves and accounts within the Lummus Asbestos PI Trust estate as deemed by the Trustees to be useful in carrying out the purposes of the Lummus Asbestos PI Trust;

(vii) sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding or legal action;

(viii) adopt the Trust By-laws and from time to time amend the Trust By-laws in accordance with the terms thereof;

(ix) supervise and administer the Lummus Asbestos PI Trust in accordance with the Lummus TDP and the terms hereof;

(x) administer, amend, supplement, or modify the Lummus TDP in accordance with the terms hereof and thereof;

(xi) appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing and forecasting, and other consultants or alternative dispute resolution panelists, and agents as the business of the Lummus Asbestos PI Trust requires, and to delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of the Lummus Asbestos PI Trust;

(xii) pay employees, legal, financial, accounting, investment, auditing and forecasting, and other consultants, advisors, and agents reasonable compensation, including without limitation, compensation at rates approved by the Trustees for services rendered prior to the execution hereof;

(xiii) compensate the Trustees, the Lummus Future Claimants' Representative, the TAC and their respective Representatives and reimburse all out of pocket costs and expenses incurred by such Entities in connection with the performance of their duties hereunder, including without limitation costs and expenses incurred prior to the execution hereof.

(xiv) execute, deliver and perform such instruments as the Trustees consider proper in administering the Lummus Asbestos PI Trust;

(xv) enter into such other arrangements with third parties as are deemed by the Trustees to be useful in carrying out the purposes of the Lummus Asbestos PI Trust, provided such arrangements do not conflict with any other provision of this Lummus Asbestos PI Trust Agreement or the Lummus TDP;

(xvi) in accordance with Section 3.4, indemnify the Entities to be indemnified under Section 3.4 to the fullest extent that a corporation or trust organized under the law of the State of Delaware is from time to

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

time entitled to indemnify and/or insure its Representatives and purchase insurance for the Lummus Asbestos PI Trust and those Entities for whom the Lummus Asbestos PI Trust has an indemnification obligation hereunder;

(xvii) delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Lummus Asbestos PI Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any such delegation, except as provided in Sections 5.4, 6.8 and 7.9;

(xviii) consult with the Reorganized Debtor, ABB, the Non-Debtor Affiliates or their successors at such times and with respect to such issues relating to the conduct of the Lummus Asbestos PI Trust as the Trustees consider desirable;

(xix) make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Lummus Asbestos PI Trust [**or the name of the Reorganized Debtor or any successor in interest**], any claim, right, action or cause of action included in the Lummus Asbestos PI Trust Assets;

(xx) merge or contract with other claims resolution facilities that are not specifically created by this Lummus Asbestos PI Trust Agreement or the Lummus TDP; provided that such merger or contract shall not (a) subject the Reorganized Debtor or any successor in interest to any risk of having any Lummus Asbestos PI Trust Claims asserted against it or them, (b) result in the imposition of any federal, state or local tax or assessment on the Reorganized Debtor, or (c) otherwise jeopardize the validity or enforceability of the injunctions issued pursuant to the Plan;

(xxi) object to Lummus Asbestos PI Trust Claims as provided in the Plan and the Lummus TDP;

(xxii) seek to modify the Plan as provided in Article 4 of the Plan;

(xxiii) procure insurance policies and establish claims handling agreements and other arrangements as provided in Section 8.2(a)(ii) of this Lummus Asbestos PI Trust Agreement;

(xxiv) obtain a tax identification number for the Lummus Asbestos PI Trust, communicate with the Internal Revenue Service and state and local taxing authorities on behalf of the Lummus Asbestos PI Trust, make payment of taxes on behalf of the Lummus Asbestos PI Trust, and file all applicable tax returns for the Lummus Asbestos PI Trust; and

(xxv) execute, deliver and perform the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus) and the other Plan Documents to which the Lummus Asbestos PI Trust is a party.

(d) The Trustees shall not have the power to guarantee any debt of other Entities.

(e) In addition to the consent requirements of Section 3.2(f), the Trustees shall give the Lummus Future Claimants' Representative and the TAC prompt notice of any act performed or taken pursuant to Section 3.1(c)(ii), (iii), (iv), (vi), (vii), (viii), (ix), (x), (xiii), (xv), (xviii), (xix), (xx), (xxi), (xxii) and (xxiii).

### 3.2 General Administration.

(a) To the extent not inconsistent with the terms of this Lummus Asbestos PI Trust Agreement, the Trust By-laws shall govern the affairs of the Lummus Asbestos PI Trust and each Trustee shall act in accordance with the Trust By-laws. In the event of an inconsistency between the Trust By-laws and this Lummus Asbestos PI Trust Agreement, this Lummus Asbestos PI Trust Agreement shall govern.

(b) Tax Returns and Reports.

(i) The Trustees shall cause to be obtained, at the cost and expense of the Lummus Asbestos PI Trust, a Federal Employer Identification Number for the Lummus Asbestos PI Trust and shall cause such income tax

## PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

and other returns and statements as are required by the applicable provisions of the IRC and the Treasury Regulations and such other state or local laws and regulations as may be applicable to be timely filed on behalf of the Lummus Asbestos PI Trust on the basis of a December 31 year end. The Trustees shall take all steps necessary to ensure that any tax obligations imposed upon the Lummus Asbestos PI Trust are paid and shall otherwise comply with Section 1.468B-2 of the Treasury Regulations and all other reporting obligations of the Lummus Asbestos PI Trust. The Trustees shall comply with all applicable withholding obligations as required under the applicable provisions of the IRC and such other state and local laws as may be applicable, and the regulations promulgated thereunder.

(ii) The Trustees shall cause the Trust to qualify and maintain, qualification as a "qualified settlement fund" within the meaning of section 1.468B-1(c) of the Treasury Regulations promulgated under section 468B of the IRC.

(iii) Within seventy-five (75) days (or earlier if required by law) after the end of each calendar year, the Lummus Asbestos PI Trust shall cause to be prepared and mailed such information as required by law to enable payees to complete and file each of their respective federal, state and local income and other tax returns. The Trustees also shall provide a copy of any filed tax returns of the Lummus Asbestos PI Trust to the Lummus Future Claimants' Representative and the TAC when such return is filed.

(c) (i) For so long as the Chapter 11 Case remains open, the Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, but, in any event, no later than one hundred twenty (120) days following the end of each fiscal year, an annual report containing financial statements of the Lummus Asbestos PI Trust (including, without limitation, a balance sheet of the Lummus Asbestos PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm that such financial statements present fairly in all material respects the financial position of the Lummus Asbestos PI Trust as of such year end and the results of its operations as of the year then ended in conformity with accounting principles generally accepted in the United States. The Trustees shall provide a copy of such report to the Lummus Future Claimants' Representative, the TAC and the Reorganized Debtor or its successor when such reports are filed with the Bankruptcy Court.

(ii) After the Chapter 11 Case is closed, the Trustees shall cause to be prepared, as soon as available, but, in any event, no later than one hundred twenty (120) days following the end of each fiscal year, and, once prepared, shall make copies available with reasonable promptness to any Entity upon written request, an annual report containing financial statements of the Lummus Asbestos PI Trust (including, without limitation, a balance sheet of the Lummus Asbestos PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of such firm that such financial statements present fairly in all material respects the financial position of the Lummus Asbestos PI Trust as of such year end and the results of its operations for the year then ended in conformity with accounting principles generally accepted in the United States. The Trustees shall provide, with reasonable promptness, a copy of such report to the Lummus Future Claimants' Representative, the TAC and the Reorganized Debtor or its successor when such report is available.

(iii) For so long as the Chapter 11 Case remains open, simultaneously with delivery of each set of financial statements referred to in Section 3.2(c)(i), the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of Lummus Asbestos PI Trust Claims (and the amount paid in respect of each such Lummus Asbestos PI Trust Claim) disposed of during the period covered by the financial statements. The Trustees shall provide a copy of such report to the Lummus Future Claimants' Representative and the TAC when such report is filed.

(iv) After the Chapter 11 Case is closed, simultaneously with delivery of each set of financial statements referred to in Section 3.2(c)(ii), the Trustees shall cause to be prepared, and, after prepared, shall

## PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

make copies available with reasonable promptness to any Entity upon written request, a report containing a summary regarding the number and type of Lummus Asbestos PI Trust Claims (and the amount paid in respect of each such Lummus Asbestos PI Trust Claim) disposed of during the period covered by the financial statements. The Trustees

shall provide, with reasonable promptness, a copy of such report to the Lummus Future Claimants' Representative and the TAC when such report is available.

(v) All materials required to be filed with the Bankruptcy Court by this Section 3.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Bankruptcy Court.

(d) The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projection covering such fiscal year and the succeeding four fiscal years. The Trustees shall provide a copy of the budget and cash flow projection to the Lummus Future Claimants' Representative and the TAC.

(e) The Trustees shall consult with the Lummus Future Claimants' Representative and the TAC on the implementation and administration of the Lummus Asbestos PI Trust and the Lummus TDP. The Trustees may consult with the Lummus Future Claimants' Representative and the TAC with respect to any other matter affecting the Lummus Asbestos PI Trust and the Lummus TDP. The Trustees shall meet with the Lummus Future Claimants' Representative and the TAC not fewer than four (4) times each calendar year during the first two (2) years following the Effective Date and then two (2) times each calendar year thereafter, which shall be at a regular or special meeting of the Trustees as mutually agreed to by the Trustees, the Lummus Future Claimants' Representative and the TAC, to discuss matters regarding the administration of the Lummus Asbestos PI Trust, the review, determination, liquidation, and payment of Lummus Asbestos PI Trust Claims, and the condition of the Lummus Asbestos PI Trust Assets.

(f) In addition to the other provisions contained in this Lummus Asbestos PI Trust Agreement or in the Lummus TDP requiring the consent of the Lummus Future Claimants' Representative and the TAC, the Trustees shall be required to obtain the consent of the Lummus Future Claimants' Representative and the consent of the TAC to:

(i) amend any provision of this Lummus Asbestos PI Trust Agreement;

(ii) terminate the Lummus Asbestos PI Trust pursuant to Section 8.2 hereof;

(iii) change the number of Trustees to serve hereunder and appoint successor Trustee(s); provided, however that in no event shall the number of Trustees authorized to serve hereunder exceed five (5);

**(iv) [settle the liability of any insurer under any Subject Lummus Insurance Policy or to settle any Lummus Asbestos Insurance Rights;]**

(v) change the compensation of the Trustees (other than with respect to cost-of-living increases);

(vi) amend or modify the Lummus TDP; or

(vii) take any action pursuant to Section 3.1(c)(iii), 3.1(c)(viii), 3.1(c)(xx), 3.1(c)(xxi) or 3.1(c)(xxiii).

(g) The Trustees, upon notice from the Lummus Future Claimants' Representative or the TAC requesting consideration of one or more issues, shall at their next regular meeting or, if appropriate, at a specially called meeting, place on their agenda and consider such issues.

3.3 **Claims Administration.** On the Effective Date, the Trustees shall promptly implement the Lummus TDP. The Lummus TDP provides or will provide, as applicable, mechanisms such as structured, periodic or supplemental payments, pro rata distributions, matrices or periodic review of estimates of the numbers and

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

values of present Lummus Asbestos PI Trust Claims and future demands, and other comparable mechanisms, that provide reasonable assurance that the Lummus Asbestos PI Trust will value and be in a financial position to pay Lummus Asbestos PI Trust Claims that involve similar claims in substantially the same manner.

3.4 **Indemnification of Trustees and Additional Indemnitees.**

(a) The Lummus Asbestos PI Trust shall indemnify and defend the Trustees, the Lummus Asbestos PI Trust's officers, and employees to the fullest extent that a corporation or trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend its directors, trustees, officers and employees against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder. Additionally, any of the Additional Indemnitees who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative, or arbitrative action, by reason of any act or omission of such Additional Indemnitees with respect to (i) the

Chapter 11 Case, CE Plan, and any act or omission undertaken in furtherance thereof by them prior to the commencement thereof, (ii) the liquidation of any Lummus Asbestos PI Trust Claims, (iii) the administration of the Lummus Asbestos PI Trust and the implementation of Lummus TDP, or (iv) any and all activities in connection with this Lummus Asbestos PI Trust Agreement shall be indemnified and defended by the Lummus Asbestos PI Trust to the fullest extent that a corporation or trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend its officers, directors, Trustees, and employees, against reasonable expenses, costs and fees (including reasonable attorneys' fees and costs), judgments, awards, amounts paid in settlement, and liabilities of all kinds incurred by each Additional Indemnitee in connection with or resulting from such action, suit, or proceeding, if he or she acted in good faith and in a manner such Additional Indemnitee reasonably believed to be in, or not opposed to, the best interests of the holders or future holders of Lummus Asbestos PI Trust Claims whom the applicable Additional Indemnitee represents. Notwithstanding the foregoing, and subject to Section 3.4(b) below, neither the Trustees nor any officer or employee of the Lummus Asbestos PI Trust, nor the Lummus Future Claimants' Representative nor any member of the TAC shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which they are ultimately liable under Sections 5.4, 6.8 or 7.9, as applicable.

(b) Reasonable expenses, costs and fees (including reasonable attorneys' fees and costs) incurred by or on behalf of a Trustee or any Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or arbitrative from which he or she is indemnified by the Lummus Asbestos PI Trust pursuant to Section 3.4(a), shall be paid by the Lummus Asbestos PI Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such Trustee or Additional Indemnitee, to repay such amount in the event that it shall be determined ultimately by Final Order that such Trustee or any Additional Indemnitee is not entitled to be indemnified by the Lummus Asbestos PI Trust.

(c) The Trustees shall have the power, generally or in specific cases, to cause the Lummus Asbestos PI Trust to indemnify the agents, advisors, or consultants of the Lummus Asbestos PI Trust to the same extent as provided in this Section 3.4 with respect to the Trustees.

(d) Any indemnification under Section 3.4(c) of this Lummus Asbestos PI Trust Agreement shall be made by the Lummus Asbestos PI Trust upon a determination by the Trustees that indemnification of such Entity is proper in the circumstances.

(e) The Trustees may purchase and maintain reasonable amounts and types of insurance on behalf of the Lummus Asbestos PI Trust and pay any individual who is or was a Trustee, officer, employee, agent or representative of the Lummus Asbestos PI Trust or an Additional Indemnitee against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, Lummus Future Claimants' Representative, member of the TAC, officer, employee, agent or other representative.

## PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

3.5 **Encumbrance.** The Trustees and the Additional Indemnitees shall have an Encumbrance upon the Lummus Asbestos PI Trust Assets which shall be prior to any other Encumbrance thereon, and the Lummus Asbestos PI Trust hereby grants a security interest in the Lummus Asbestos PI Trust Assets, all proceeds thereof and all accounts into which such proceeds or the Lummus Asbestos PI Trust Assets are deposited or maintained to each of the Trustees and the Additional Indemnitees, in each case to secure the payment of any amounts payable to them pursuant to Section 3.4, 5.5, 6.5 or 7.6, as applicable. The Lummus Asbestos PI Trust shall take such actions as may be necessary or reasonably requested by any of the Trustees, the Lummus Future Claimants' Representative, the TAC or any of the other Additional Indemnitees to evidence such Encumbrance (including, without limitation, filing appropriate financing statements).

### ARTICLE IV
### ACCOUNTS, INVESTMENTS, AND PAYMENTS

4.1 **Accounts.** The Trustees may, from time to time, establish and maintain such accounts and reserves within the Lummus Asbestos PI Trust estate as they may deem necessary, prudent, or useful in order to provide for the payment of Lummus Asbestos PI Trust Expenses payable hereunder and TDP Determined Claims in accordance with the Lummus TDP, and may, with respect to any such account or reserve, restrict the use of monies therein.

4.2 **Investments.** Investment of monies held in the Lummus Asbestos PI Trust shall be administered in the manner in which individuals of ordinary prudence, discretion, and judgment would act in the management of their own affairs, subject to the following limitations and provisions:

(a) The Lummus Asbestos PI Trust shall not acquire any equity or debt securities or other instruments issued by any Entity (other than debt securities or other instruments issued or fully guaranteed or insured as to principal and interest by the United States of America or any agency or instrumentality thereof) if, following such acquisition, the aggregate fair market

value as determined in good faith by the Trustees of all securities and instruments issued by such Entity held by the Lummus Asbestos PI Trust would exceed 2% of the aggregate value of the Lummus Asbestos PI Trust estate. The Lummus Asbestos PI Trust shall not hold any equity or debt securities or other instruments issued by any Entity (other than debt securities or other instruments issued or fully guaranteed or insured as to principal and interest by the United States of America or any agency or instrumentality thereof) to the extent that the aggregate fair market value as determined in good faith by the Trustees of all securities and instruments issued by such Entity and held by the Lummus Asbestos PI Trust would exceed 5% of the aggregate value of the Lummus Asbestos PI Trust estate. The Lummus Asbestos PI Trust shall not acquire any securities or other instruments issued by any Person (other than debt securities or other instruments issued or fully guaranteed as to the principal and interest by the United States of America) unless, at the time of acquisition, the securities or other instruments so acquired represent not more than 5% of all outstanding securities or instruments of the same class and series.

(b) No more than     % of the Lummus Asbestos PI Trust Assets may at any time be invested in equity securities. The Lummus Asbestos PI Trust shall not acquire, directly or indirectly, equity securities of any Entity if, immediately following such acquisition, the Lummus Asbestos PI Trust would hold more than 1% of the equity securities of such Entity. The Lummus Asbestos PI Trust shall not hold, directly or indirectly, more than 2% of the equity securities of any Entity. The Lummus Asbestos PI Trust shall not acquire, directly or indirectly, equity securities of any Entity (i) unless such securities are listed or traded on the New York Stock Exchange, the American Stock Exchange or The NASDAQ National Market of The NASDAQ Stock Market, Inc. or (ii) if such Entity is not organized under the laws of the United States of America or a political subdivision thereof unless such securities are issued in ADR form, ADS form or registry form denominated in Dollars.

## PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

(c) Unless otherwise permitted by clauses (d), (e), (f) or (g), the Lummus Asbestos PI Trust shall not acquire or hold, for longer than 90 days, any debt securities, participation certificates or similar instruments of any Entity that are not commercial paper unless (i) such securities, certificates or similar instruments have been issued or fully guaranteed or insured as to principal and interest by the United States of America or any agency or instrumentality thereof or (ii) such securities, certificates or similar instruments are rated A or higher by Moody's or S&P or, in the case of short-term notes, P-2 or higher by Moody's or SP-1 or higher by S&P.

(d) The Lummus Asbestos PI Trust shall not acquire, or hold for longer than 90 days, any commercial paper unless (i) such commercial paper is rated "Prime-2" or higher by Moody's or "A-2" or higher by S&P's and (ii) the senior long-term debt of the commercial paper issuer is rated "A" or higher by Moody's or S&P.

(e) The Lummus Asbestos PI Trust shall not acquire or hold any banker's acceptance, certificate of deposit, Eurodollar or other time deposit, unless that instrument has a maturity of not more than three (3) years from the date of acquisition and is issued by a domestic commercial bank (or an Affiliate thereof) having capital and surplus in excess of $500 million and either such issue of banker's acceptances, certificates of deposit or deposits or such issuer has a rating of A or higher by either Moody's or S&P.

(f) The Lummus Asbestos PI Trust shall not acquire debt securities which are direct or indirect obligations of any state, county, city or other qualifying tax exempt Entity unless such debt securities have a rating of MIG 2 or higher from Moody's or SP-1 or higher from S&P (if such securities are short-term debt securities) or A or higher from either Moody's or S&P (if such securities are long-term securities).

(g) The Lummus Asbestos PI Trust may acquire or cause Lummus Asbestos PI Trust Assets to be held in money market mutual funds registered under the Investment Company Act of 1940, as amended, that have the highest rating obtained from either Moody's or S&P, the portfolio of which consists generally of assets in which the monies of the Lummus Asbestos PI Trust may be invested pursuant to subsections (a), (b), (c), (d), (e) and (f) of this Section 4.2.

(h) The Lummus Asbestos PI Trust may enter into repurchase agreements collateralized by debt securities and other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof equal to at least 102% of such repurchase obligations with primary United States governmental securities dealers or with commercial banks meeting the qualifications of Eligible Depositories. The term "Eligible Depositories" shall mean commercial bank(s) designated from time to time by the Trustee for the Estate Assets, each of which (1) has deposits insured by the Federal Deposit Insurance Corporation, (2) is organized under the laws of the United States or any state thereof, (3) has a minimum long-term rating of "A-3" or the then equivalent by Moody's and a long-term rating of "A-" (or the then equivalent) by S&P and (4) has total risk-based capital in excess of $5 billion and meets the minimum risk-based ratios established under the Federal Deposit Insurance Corporation Improvement Act of 1991.

(i) The Lummus Asbestos PI Trust shall not engage in short sales, puts, calls, straddles, hedges, options, futures, other derivatives or commodities contracts and shall not acquire securities on margin (or otherwise use credit or borrowed funds to acquire securities).

(j) In determining investments to be held by the Lummus Asbestos PI Trust, due regard shall be given by the Trustees to safety of principal and to production of reasonable amounts of current income. The Trustees shall not have an obligation to invest Lummus Asbestos PI Trust Assets for capital appreciation, in view of the purposes for which the Lummus Asbestos PI Trust was created, but are not prohibited from so doing.

Notwithstanding the foregoing, the Lummus Asbestos PI Trust may acquire and hold (A) equity or debt securities or instruments of the type(s) described in clauses (a), (b), (c) or (d) of this Section 4.2 which are issued by the

### PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

Debtor, Reorganized Debtor, ABB, ABB Holdings, ABB Oil & Gas or any of their Subsidiaries, Affiliates, or successors, and (B) any other property or asset contributed in kind as a part of the ABB Contribution, in each case without regard to any of the limitations set forth in such clauses (a), (b), (c) or (d).

4.3 **Source of Payments.** All Lummus Asbestos PI Trust Expenses and all liabilities with respect to the Lummus Asbestos PI Trust Claims shall be payable by the Lummus Asbestos PI Trust solely from the Lummus Asbestos PI Trust Assets and other assets held by the Lummus Asbestos PI Trust from time to time. Except as otherwise provided in Section 7.15.2 of the Plan, neither the Debtor, Reorganized Debtor, their respective Affiliates or subsidiaries, any successor in interest or the present or former stockholders, directors, officers, employees or agents of the Debtor, Reorganized Debtor, or their subsidiaries, nor the Trustees, the Lummus Future Claimants' Representative, the TAC or any of their officers, agents, advisors, or employees shall be liable for the payment of any Lummus Asbestos PI Trust Claims, Lummus Asbestos PI Trust Expense or any other liability of the Lummus Asbestos PI Trust.

4.4 **Indemnification.** The Lummus Asbestos PI Trust shall indemnify the Debtor and the Released Parties in accordance with the ABB and Non-Debtor Affiliate Settlement Agreement (Lummus).

### ARTICLE V
### TRUSTEES

5.1 **Number.** The initial number of Trustees shall be one (1); provided, however, that the number of Trustees may be increased or decreased in accordance with Section 3.2(f)(iii) hereof. The initial Trustee shall be nominated by the Lummus Future Claimants' Representative, the CCC and the ACC, if appointed, subject to the approval of the Bankruptcy Court pursuant to Section 7.2.2 of the Plan.

5.2 **Term of Service.**

(a) The initial Trustee shall serve from the Effective Date and each successor Trustee or Trustees named to fill a vacancy shall serve from the date of appointment until the earlier of (i) his or her death, (ii) the end of the calendar in which he or she reaches age 70, (iii) his or her resignation pursuant to Section 5.2(b), (iv) his or her removal pursuant to Section 5.2(c), or (v) the termination of the Lummus Asbestos PI Trust pursuant to Section 8.2.

(b) Any Trustee may resign at any time by written notice to each of the TAC and the Lummus Future Claimants' Representative. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c) Any Trustee may be removed in the event that such Trustee becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause. Good cause shall be deemed to include, without limitation, any substantial failure to comply with Section 3.2, a consistent pattern of neglect and failure to perform or participate in performing the duties of a trustee hereunder, or repeated non-attendance at scheduled meetings. Such removal shall be made by the mutual decision of the TAC and the Lummus Future Claimants' Representative, and shall take effect at such time as the TAC and the Lummus Future Claimants' Representative jointly shall determine.

5.3 **Appointment of Successor Trustee(s).**

(a) In the event of a vacancy in the position of a Trustee, the vacancy shall be filled by the joint consent of the TAC and the Lummus Future Claimants' Representative. If such vacancy has not been filled within ninety (90) days, the Bankruptcy Court shall fill the vacancy on application of any of such person.

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

(b) Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act. No successor Trustee shall be liable personally for any act or omission of his or her predecessor Trustee.

5.4 **Liability of Trustees, Officers and Employees.** No Trustee, officer, or employee of the Lummus Asbestos PI Trust shall be liable to the Lummus Asbestos PI Trust, to any Entity holding a Lummus Asbestos PI Trust Claim, or to any other Entity except for such individual's (i) own breach of trust committed in bad faith or (ii) willful misappropriation. Such protection may, in the discretion of the Trustees, be extended to the agents, advisors, or consultants of the Lummus Asbestos PI Trust. No Trustee, officer, or employee of the Lummus Asbestos PI Trust shall be liable for any act or omission of any other officer, employee, agent or consultant of the Lummus Asbestos PI Trust, unless such Trustee, officer, employee or consultant of the Lummus Asbestos PI Trust, respectively, acted with bad faith in the selection or retention of such other officer, employee, agent, or consultant of the Lummus Asbestos PI Trust.

5.5 **Compensation and Expenses of Trustees.**

(a) Each Trustee shall receive compensation from the Lummus Asbestos PI Trust for his or her services as a Trustee in the amount of $        per annum plus a per diem allowance for meetings or other Lummus Asbestos PI Trust business attended in the amount of $        ; provided, however, that if a meeting was less than a full day's duration, the Trustees shall receive only a proportional payment of the per diem amount. The per annum compensation payable to each Trustee hereunder shall be reviewed every three (3) years and appropriately adjusted with the consent of each of the Lummus Future Claimants' Representative and the TAC.

(b) The Lummus Asbestos PI Trust will promptly reimburse each Trustee for all reasonable out-of-pocket costs and expenses incurred by each Trustee in connection with the performance of his or her duties hereunder.

(c) The Lummus Asbestos PI Trust will include a description of the amounts paid under this Section 5.5 in the report to be filed pursuant to Section 3.2(c)(i) of this Lummus Asbestos PI Trust Agreement.

5.6 **Trustees' Employment of Experts.** The Trustee may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors and forecasters, and other Entities deemed by the Trustee to be qualified as experts on the matters submitted to them with the consent of each of the Lummus Future Claimants' Representative and the TAC, and the opinion of any such Entities on any matters submitted to them by the Trustee shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustee hereunder in good faith and in accordance with the written opinion of any such Entity, in the absence of gross negligence.

5.7 **Trustees' Independence.** No Trustee shall, during the term of his or her service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for Reorganized Debtor, ABB, any Non-Debtor Affiliates, or any of their successors. No Trustee shall act as an attorney for any Entity who holds a Lummus Asbestos PI Trust Claim.

5.8 **Bond.** The Trustees shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## ARTICLE VI
### THE FUTURE CLAIMANTS' REPRESENTATIVE

6.1 **Duties.** The Lummus Future Claimants' Representative shall serve in a fiduciary capacity for the purpose of protecting the rights of persons that might subsequently assert Demands. Where provided in this

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

Lummus Asbestos PI Trust Agreement or the Lummus TDP, certain actions of the Trustees are subject to the consent of the Lummus Future Claimants' Representative.

6.2 **Term of Office.**

(a) The Lummus Future Claimants' Representative shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 6.2(b), (iii) his or her removal pursuant to Section 6.2(c) or (iv) the termination of the Lummus Asbestos PI Trust pursuant to Section 8.2.

(b) The Lummus Future Claimants' Representative may resign at any time by written notice to the Trustees. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c) The Lummus Future Claimants' Representative may be removed in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause. Good cause shall be deemed to include, without limitation, a consistent pattern of neglect and failure to perform or to participate in performing the duties of the Lummus Future Claimants' Representative hereunder and under the Lummus TDP, such as repeated non-attendance at scheduled meetings. Such removal shall be made by decision of the Trustees and the TAC, and shall take effect at such time as the Trustees and the TAC jointly shall determine.

6.3 **Appointment of Successor.** A vacancy caused by resignation shall be filled with an individual nominated by the resigning Lummus Future Claimants' Representative. A vacancy for any other reason, or in the absence of a nomination by the former Lummus Future Claimants' Representative, shall be filled with an individual selected by the Trustees with the consent of the TAC.

6.4 **Lummus Future Claimants' Representative's Employment of Professionals.** The Lummus Future Claimants' Representative may retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, asbestos experts and other Entities deemed by the Lummus Future Claimants' Representative to be qualified as experts on matters submitted to them, and the opinion of any such Entities on any matters submitted to them shall be full and complete authorization and protection in support of any action taken or not taken by the Lummus Future Claimants' Representative in good faith and in accordance with the advice of any such Entity, and in the absence of gross negligence. The Lummus Future Claimants' Representative and his or her experts shall at all times have complete access to the Lummus Asbestos PI Trust's officers, employees and agents, and the accountants, appraisers, auditors, forecasters and other experts retained by the Lummus Asbestos PI Trust as well as to all information generated by them or otherwise available to the Lummus Asbestos PI Trust or the Trustees.

6.5 **Compensation and Expenses of the Lummus Future Claimants' Representative.**

(a) The Lummus Future Claimants' Representative shall receive compensation from the Lummus Asbestos PI Trust for his or her services as the Lummus Future Claimants' Representative as detailed on Schedule 1 attached hereto, such compensation being subject to an annual review and adjustment by the Trustees.

(b) The Lummus Asbestos PI Trust will promptly reimburse, or pay directly if so instructed, the Lummus Future Claimants' Representative for all reasonable out-of-pocket costs and expenses, including reasonable fees and costs associated with the employment of professionals pursuant to Section 6.4 and the procurement and maintenance of insurance incurred by the Lummus Future Claimants' Representative in connection with the performance of his or her duties hereunder. All such reimbursements or direct payments shall be deemed Lummus Asbestos PI Trust Expenses.

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

6.6 **Procedure for Obtaining Consent of the Lummus Future Claimants' Representative.**

(a) In the event the consent of the Lummus Future Claimants' Representative is required pursuant to the terms of this Lummus Asbestos PI Trust Agreement, the Trustees shall promptly provide the Lummus Future Claimants' Representative and his or her counsel with notice and with all information regarding the matter in question.

(b) The Lummus Future Claimants' Representative must consider in good faith and in a timely fashion any request by the Trustees and may not withhold his or her consent unreasonably. If the Lummus Future Claimants' Representative does not notify the Trustees of his or her objection to such request within 45 days or such other time as has been approved by the Bankruptcy Court after receiving notice and information regarding such request, then the Lummus Future Claimants' Representative's consent shall be deemed to have been affirmatively granted.

6.7 **Lack of Consent of the Lummus Future Claimants' Representative.**

(a) In the event the Trustees are unable to obtain the consent of the Lummus Future Claimants' Representative to any action or decision for which consent is required after following the procedure set forth in Section 6.6 of this Lummus Asbestos PI Trust Agreement, or if the Trustees and the Lummus Future Claimants' Representative are unable to reach agreement on any matter on which such consent is required, the matter shall be submitted promptly to alternative dispute resolution if mutually agreeable to the Trustees and the Lummus Future Claimants' Representative.

(b) If the disagreement is not resolved by alternative dispute resolution or if the Trustees and the Lummus Future Claimants' Representative do not agree to participate in any such alternative dispute resolution, the Trustees may apply to the Bankruptcy Court on an expedited basis for approval of such action or decision, and only if such approval is given by the Bankruptcy Court by entry of an appropriate order, shall the Trustees have the authority to implement such action or decision without the Lummus Future Claimants' Representative's consent.

6.8 **Liability of Lummus Future Claimants' Representative, Officers and Employees.** The Lummus Future Claimants' Representative shall not be liable to the Lummus Asbestos PI Trust, to any Entity holding a Lummus Asbestos PI Trust Claim, or to any other Entity except for such individual's (i) own breach of trust committed in bad faith or (ii) willful misappropriation. Such protection may, in the discretion of the Trustees, be extended to the agents, advisors, attorneys, or consultants of the Lummus Future Claimants' Representative. Neither the Lummus Future Claimants' Representative nor any officer or employee of the Lummus Future Claimants' Representative shall be liable for any act or omission of any other officer, employee, agent, or consultant of the Lummus Asbestos PI Trust, unless the Lummus Future Claimants' Representative, or officer or employee of the Lummus Future Claimants' Representative, acted with bad faith in the selection or retention of such other officer, employee, agent, or consultant of the Lummus Asbestos PI Trust.

6.9 **Copies to the Lummus Future Claimants' Representative.** The Trustees shall provide the Lummus Future Claimants' Representative with copies of all notices and other written information provided to the TAC pursuant to this Lummus Asbestos PI Trust Agreement.

### ARTICLE VII
### TRUST ADVISORY COMMITTEE

7.1 **Formulation and Number.** The TAC shall be formed pursuant to the Plan as of the Effective Date. The TAC shall be composed of [**three (3)**] members. The initial TAC members shall be nominated by the Debtor, the

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

CCC, the ACC, if appointed, and the Lummus Future Claimants' Representative, acting jointly, subject to approval by the Bankruptcy Court pursuant to Section 7.2.3 of the Plan and named on the signature page hereof. The TAC shall have a chairperson who shall act as the TAC's liaison with the Lummus Future Claimants' Representative and the Lummus Future Claimants' Representative, coordinate and schedule meetings of the TAC, and handle all administrative matters that come before the TAC.

7.2 **Duties.** The TAC and its members shall serve in a fiduciary capacity representing all holders of present Lummus Asbestos PI Trust Claims. Where provided in this Lummus Asbestos PI Trust Agreement or the Lummus TDP, certain actions by the Trustees are subject to the consent of the TAC.

7.3 **Term of Office.**

(a) Each member of the TAC shall serve until the earlier of (i) his or her death, (ii) his or her resignation pursuant to Section 7.3(b), (iii) his or her removal pursuant to Section 7.3(c) or (iv) the termination of the Lummus Asbestos PI Trust pursuant to Section 8.2.

(b) Any member of the TAC may resign at any time by written notice to each of the remaining TAC members. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c) Any member of the TAC may be removed in the event he or she becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause. Good cause shall be deemed to include, without limitation, a consistent pattern of neglect and failure to perform or to participate in performing the duties of such member hereunder and under the Lummus TDP, such as repeated non-attendance at scheduled meetings. Such removal shall be made by the majority vote of the Trustees, the Lummus Future Claimants' Representative and the other members of the TAC, and shall take effect at such time as the Trustees, the Lummus Future Claimants' Representative and the other members of the TAC jointly determine.

7.4 **Appointment of Successors.** A vacancy in the TAC caused by resignation, death, or removal shall be filled with an individual, not a firm, approved by the majority vote of the Lummus Future Claimants' Representative and all remaining members of the TAC.

7.5 **The TAC's Employment of Professionals.** The TAC may retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, asbestos experts and other Entities deemed by the TAC to be qualified as experts on matters submitted to them, and the opinion of any such Entities on any matters submitted to them shall be full and complete authorization and protection in support of any action taken or not taken by the TAC hereunder in good faith and in accordance with the written opinion of any such Entity, and in the absence of gross negligence. The TAC and its experts shall at all times have complete access to the Lummus Asbestos PI Trust's officers, employees and agents, and the accountants, appraisers, auditors, forecasters and other experts retained by the Lummus Asbestos PI Trust as well as all information generated by them or otherwise available to the Lummus Asbestos PI Trust or the Trustees.

7.6 **Compensation for Attendance at Meetings and Expenses of the TAC.** The members of the TAC shall be compensated for attendance at meetings as detailed on Schedule 2 attached hereto. The Lummus Asbestos PI Trust will promptly reimburse, or pay directly if so instructed, the TAC and each TAC member for all reasonable out-of-pocket costs and expenses, including reasonable fees and costs associated with employment of professionals pursuant to Section 7.5 and the procurement and maintenance of insurance incurred by the TAC in connection with the performance of its members' duties hereunder. Such reimbursement or direct payment shall be deemed a Lummus Asbestos PI Trust Expense.

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

7.7 **Procedure for Obtaining Consent of the TAC.**

(a) In the event the consent of the TAC is required pursuant to the terms of this Lummus Asbestos PI Trust Agreement, the Trustees shall promptly provide the TAC and its counsel with notice and with all information regarding the matter in question.

(b) The TAC must consider in good faith and in a timely fashion any request by the Trustees and may not withhold its consent unreasonably. If the TAC does not notify the Trustees of its objection to such request within 45 days or such other time as has been approved by the Bankruptcy Court after receiving notice and information regarding such request, then the TAC's consent shall be deemed to have been affirmatively granted.

(c) Except where otherwise provided for in this Lummus Asbestos PI Trust Agreement, the TAC shall act in all cases by majority vote.

7.8 **Lack of Consent of the TAC.**

(a) In the event the Trustees are unable to obtain the consent of the TAC on any action or decision for which consent of the TAC is required, after following the procedure set forth in Section 7.7 of this Lummus Asbestos PI Trust Agreement, or if the Trustees and the TAC are unable to reach agreement on any matter on which the TAC's consent is required, then the matter may be submitted promptly to alternative dispute resolution if mutually agreeable to the Trustees and the TAC.

(b) If the disagreement is not resolved by alternative dispute resolution, or if the Trustees and the TAC do not agree to participate in any such alternative dispute resolution, the Trustees may apply to the Bankruptcy Court on an expedited basis for approval of such action or decision, and only if such approval is given by the Bankruptcy Court by entry of an appropriate order, shall the Trustees have the authority to implement such action or decision without the TAC's consent.

7.9 **Liability of the TAC, Officers and Employees.** No member of the TAC shall be liable to the Lummus Asbestos PI Trust, to any Entity holding a Lummus Asbestos PI Trust Claim, or to any other Entity except for such individual's (i) own breach of trust committed in bad faith or (ii) willful misappropriation. Such protection may, in the discretion of the Trustees, be extended to the agents, advisors, or consultants of the TAC. No member of the TAC, nor any officer or employee of the TAC, shall be liable for any act or omission of any other officer, employee, agent or consultant of the TAC unless the TAC, or officer or employee of the TAC, acted with bad faith in the selection or retention of such other officer, employee, agent, or consultant of the Lummus Asbestos PI Trust.

7.10 **Copies to the TAC.** The Trustees shall provide the TAC with copies of all notices and other written information provided to the Lummus Future Claimants' Representative pursuant to this Lummus Asbestos PI Trust Agreement.

**ARTICLE VIII**
**GENERAL PROVISIONS**

8.1 **Irrevocability.** The Lummus Asbestos PI Trust is irrevocable.

8.2 **Termination.**

(a) The Lummus Asbestos PI Trust shall automatically terminate on the date ninety (90) days after the first to occur of the following events (the "Termination Date"):

(i) subject to Section 3.2(f), the Trustees in their discretion decide to terminate the Lummus Asbestos PI Trust because (A) they deem it unlikely that new Lummus Asbestos PI Trust Claims will be filed against

## PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

the Lummus Asbestos PI Trust, and (B) Lummus Asbestos PI Trust Claims duly filed with the Lummus Asbestos PI Trust have been processed and paid to the extent provided in this Lummus Asbestos PI Trust Agreement and the Lummus TDP (and to the extent possible based upon the funds available to the Lummus Asbestos PI Trust from the Lummus Asbestos PI Trust Assets and the other assets then held by the Lummus Asbestos PI Trust), or have been determined not to qualify for payment under the terms of this Lummus Asbestos PI Trust Agreement and the Lummus TDP (and all such determinations are no longer subject to further review), and twelve (12) consecutive months have elapsed during which no new Lummus Asbestos PI Trust Claims have been filed with the Lummus Asbestos PI Trust; or

(ii) if the Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations and expenses of the Lummus Asbestos PI Trust in a manner consistent with this Lummus Asbestos PI Trust Agreement and the Lummus TDP, the date on which the Bankruptcy Court or other court of competent jurisdiction enters an order approving such insurance and other arrangements and such order becomes a Final Order.

(b) On the Termination Date after payment of all the Lummus Asbestos PI Trust's liabilities, after all Demands have been provided for, and after liquidation of all properties and other non-cash Lummus Asbestos PI Trust Assets or other assets then held by the Lummus Asbestos PI Trust, all monies remaining in the Lummus Asbestos PI Trust estate shall be donated to one or more organization(s) exempt from federal income tax under section 501(c)(3) of the IRC, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; provided, however, that (i) if practicable, the tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos-related lung disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtor within the meaning of Section 468B(d)(3) of the IRC. Notwithstanding any other provision of the Plan Documents, this Section 8.2(b) cannot be modified or amended.

8.3 **Amendments.** The Trustees, after consultation with the Lummus Future Claimants' Representative and the TAC, and subject to the consent of each of the Lummus Future Claimants' Representative and the TAC to the extent provided elsewhere in this Lummus Asbestos PI Trust Agreement, may modify or amend this Lummus Asbestos PI Trust Agreement or any document annexed to it, including, without limitation, the Trust By-laws or the Lummus TDP (provided the provisions of the Lummus TDP, if any, regarding any such modification or amendment are also followed). Any modification or amendment made pursuant to this Section 8.3 must be done in writing. Notwithstanding anything contained in this Lummus Asbestos PI Trust Agreement to the contrary, neither this Lummus Asbestos PI Trust Agreement, the Trust By-laws, the Lummus TDP nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify the applicability of Section 524(g) of the Bankruptcy Code, the efficacy or enforceability of the injunctions set out in the Plan, the Lummus Asbestos PI Trust's QSF status under section 468B of the IRC or the rights of the Debtor or the Reorganized Debtor under the Plan Documents.

8.4 **Meetings.** The Trustees, the Lummus Future Claimants' Representative, or a TAC member shall be deemed to have attended a meeting in the event such person spends a substantial portion of the day conferring, by phone or in person, on Lummus Asbestos PI Trust matters with the Lummus Future Claimants' Representative, the Trustees or a TAC member, as applicable. The Trustees shall have complete discretion to determine whether a meeting, as described herein, occurred for purposes of this Lummus Asbestos PI Trust Agreement.

8.5 **Severability.** Should any provision in this Lummus Asbestos PI Trust Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Lummus Asbestos PI Trust Agreement.

## PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

8.6 **Notices.** Notices to Entities asserting Asbestos Trust PI Claims shall be given at the address of such Entity, or, where applicable, such Entity's representative, in each case as provided on such person's claim form submitted to the Lummus Asbestos PI Trust with respect to his or her or its Asbestos Trust PI Claim or as otherwise provided to the Lummus

Asbestos PI Trust. Any notices or other report required or permitted by this Lummus Asbestos PI Trust Agreement must be in (i) writing and is deemed given when (a) delivered personally to the recipient, (b) sent by facsimile before 5:00 p.m. prevailing eastern time on a Business Day with a copy of such facsimile sent on the same day to the recipient by reputable overnight courier service (charges prepaid), (c) five (5) days after deposit in the U.S. mail, mailed by registered or certified mail, return receipt requested, postage prepaid, or (d) one Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); and (ii) addressed to the other Entities at the addresses set forth below, or at such other address as such Entity may designate from time to time in writing in accordance with this Section 8.6.

To the Lummus Asbestos PI Trust through the Trustees:

Attention:_____
Fax: _____

To the TAC:

Attention:_____
Fax: _____

To the Lummus Future Claimants' Representative:

Law Offices of Richard B. Schiro
Regency Plaza, Suite 1350
3710 Rawlins Street
Dallas, TX 75219
Attention: Richard B. Schiro, Esq.
Fax: (214) 521-3838

With a copy to:

Porter & Hedges, L.L.P.
1000 Main Street
36th Floor
Houston, TX 77002
Attention: John F. Higgins, Esq.
Fax: (713) 226-6248

To Debtor, Settlor or Reorganized Debtor:

ABB Lummus Global Inc.
310 Briarpark
Houston, TX 77042
Attention: Margaret Duplantier, Esq.
Fax: (713) 821-3595

## PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT

With a copy to:

Kirkpatrick & Lockhart Nicholson Graham LLP
599 Lexington Avenue
New York, NY 10022-6030
Attention: Jeffrey N. Rich, Esq.
Fax: (212) 536-3901

All such notices and communications, if delivered personally or via overnight courier or if mailed shall be effective when physically delivered at the designated addresses or, if electronically transmitted, when the communication is received at the designated addresses and confirmed by the recipient by return electronic transmission.

8.7 **Successors and Assigns.** The provisions of this Lummus Asbestos PI Trust Agreement shall be binding upon and inure to the benefit of the Debtor, Reorganized Debtor, the Lummus Asbestos PI Trust and the Trustees and their respective successors and assigns, except that neither the Debtor nor the Lummus Asbestos PI Trust nor the Trustees may assign or otherwise transfer any of its, or his or her rights or obligations under this Lummus Asbestos PI Trust Agreement, except, in the case of the Lummus Asbestos PI Trust and the Trustees, as contemplated by Sections 3.1 and 8.2.

8.8 **Limitation on Claim Interests for Securities Laws Purposes.** Lummus Asbestos PI Trust Claims and any interests therein (a) shall not be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by will or under the laws of descent and distribution and except that the foregoing shall not apply to any holder of a Lummus Derivative Asbestos Personal Injury Claim that is subrogated to a Lummus Asbestos PI Trust Claim as a result of its satisfaction of such Lummus Asbestos PI Trust Claim; (b) shall not be evidenced by a certificate or other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive any dividends or interest.

8.9 **Entire Agreement; No Waiver.** The entire agreement of the parties relating to the subject matter of this Lummus Asbestos PI Trust Agreement is contained herein and in the documents referred to herein, and this Lummus Asbestos PI Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity, except as otherwise provided in the injunctions issued pursuant to the Plan.

8.10 **Headings.** The headings used in this Lummus Asbestos PI Trust Agreement are inserted for convenience only and neither constitute a portion of this Lummus Asbestos PI Trust Agreement, nor in any manner affect the construction of the provisions of this Lummus Asbestos PI Trust Agreement.

8.11 **Governing Law.** This Lummus Asbestos PI Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware without regard to Delaware conflict of laws principles.

8.12 **Dispute Resolution.** Any disputes that arise under this Lummus Asbestos PI Trust Agreement or under the Lummus TDP or the Trust By-Laws shall be resolved by the Bankruptcy Court pursuant to the Plan, except as otherwise provided herein, or in the Lummus TDP or in the Trust By-Laws. Notwithstanding anything else herein contained, to the extent any provision of this Lummus Asbestos PI Trust Agreement is inconsistent with any provision of the Plan, the Plan shall control.

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

8.13 **Enforcement and Administration.** The provisions of this Lummus Asbestos PI Trust Agreement and the annexes hereto shall be enforced by the Bankruptcy Court pursuant to the Plan. The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustees.

8.14 **Effectiveness.** This Lummus Asbestos PI Trust Agreement shall not become effective until such time as it has been approved by the Bankruptcy Court and executed and delivered by all the parties hereto, and the Effective Date of the Plan has occurred.

8.15 **Counterpart Signatures.** This Lummus Asbestos PI Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

8.16 **References and Interpretation.** When a reference is made in this Lummus Asbestos PI Trust Agreement to a Section, such reference will be to a Section of this Lummus Asbestos PI Trust Agreement unless otherwise indicated. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.

8.17 **Notices Under Plan Documents.** The Trustees shall deliver to the TAC and the Lummus Future Claimants' Representative a copy of all written notices that the Lummus Asbestos PI Trust or the Trustees give or receive under any of the Plan Documents (other than the Lummus TDP) promptly after receipt of the same. Notices to the TAC or the Lummus Future Claimants' Representative under the Lummus TDP shall be governed by the provisions of the Lummus TDP.

\* \* \* \* \*

[signature page to follow]

*PLAN — EXHIBIT D — LUMMUS ASBESTOS PI TRUST AGREEMENT*

IN WITNESS WHEREOF, the parties have executed this ABB Lummus Global Inc. 524(g) Asbestos PI Trust Agreement this day of          , 2005.

**SETTLOR:**

ABB LUMMUS GLOBAL INC.

By:    _____

Name:  _____

Title:  _____

**TRUSTEE:**

_____

Name:

**LUMMUS FUTURE CLAIMANTS' REPRESENTATIVE**

_____

Name:  Richard B. Schiro

**TRUST ADVISORY COMMITTEE**

_____

Name:

_____

Name:

_____

Name:

**PLAN EXHIBIT E**

**LUMMUS 524(G) ASBESTOS PI TRUST**
**DISTRIBUTION PROCEDURES**

**ABB LUMMUS GLOBAL INC. 524(g)**

**LUMMUS ASBESTOS PI TRUST DISTRIBUTION PROCEDURES**

The ABB Lummus Global Inc. 524(g) Asbestos PI Trust Distribution Procedures ("Lummus TDP") provide for satisfying all asbestos-related personal injury and death claims caused by conduct of and/or exposure to products for which ABB Lummus Global Inc., a Delaware corporation ("Lummus"), has legal responsibility, as provided in and required by the Prepackaged Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code of ABB Lummus Global Inc. ("Plan") and the ABB Lummus Global Inc. 524(g) Asbestos PI Trust Agreement ("Lummus Asbestos PI Trust Agreement"). Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Glossary of Terms for the Plan Documents Pursuant to the Prepackaged Plan of Reorganization of ABB Lummus Global Inc. (the "Glossary") or in the Lummus Asbestos PI Trust Agreement.

The Plan and the Lummus Asbestos PI Trust Agreement establish the Lummus Asbestos PI Trust. The Trustee of the Lummus Asbestos PI Trust shall implement and administer this Lummus TDP in accordance with the Lummus Asbestos PI Trust Agreement.

**SECTION I**

**Introduction**

**1.1 Purpose.** This Lummus TDP has been adopted pursuant to the Lummus Asbestos PI Trust Agreement. It is designed to provide fair and equitable treatment for all Lummus Asbestos PI Trust Claims that may presently exist or may arise in the future in substantially the same manner.

**1.2 Interpretation.** Nothing in the Lummus TDP shall be deemed to create a substantive right for any claimant.

**1.3 Definitions.** The following capitalized terms used herein shall have the meanings set forth below:

"Average Value" means the average value for Disease Levels as set forth in Section 5.2(b)(3).

"Category A Claims" means TDP Determined Lummus Asbestos PI Trust Claims involving severe asbestosis and malignancies (Disease Levels IV – VIII) and those settled as Disease Level I allocated to Category A as set forth below.

"Category B Claims" means TDP Determined Lummus Asbestos PI Trust Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) and those settled as Disease Level I allocated to Category B as set forth below.

"Claimant's Jurisdiction" means (a) the jurisdiction in which the claim was filed (if at all) against Lummus in the tort system prior to the Petition Date or (b) if the claim was not filed against Lummus in the tort system prior to the Petition Date, at the claimant's election, (i) the jurisdiction in which the claimant resides at the time of diagnosis, (ii) the jurisdiction in which the claimant resides when the claim is filed with the Lummus Asbestos PI Trust, or (iii) any jurisdiction in which the claimant experienced Lummus Exposure. Notwithstanding the foregoing, 1) if a claim is asserted by a personal representative or authorized agent and 2) the Claimant's Jurisdiction would be Alabama under the provisions of the preceding sentence such that the claim asserted would arise under the Alabama Wrongful Death Statute; then the Claimant's Jurisdiction will be the Commonwealth of Pennsylvania for purposes of evaluating the Claim.

**PLAN EXHIBIT E — LUMMUS TDP**

"Claims Materials" means suitable and efficient claims materials prepared by the Lummus Asbestos PI Trust as described in Section VI.

"Claims Payment Ratio" means the claims payment ratio set forth in Section 2.5.

"Direct Claimant" has the meaning set forth in Section 5.5.

"Disease Levels" means the eight asbestos-related disease levels defined in Section 5.2(a)(3).

"Effective Date" has the meaning set forth in the Glossary.

"Expedited Review" means a review pursuant to the Expedited Review Process.

"Expedited Review Process" means the process to liquidate Lummus Asbestos PI Trust Claims set forth in Section 5.2(a).

"Exigent Hardship Claim" means a claim that meets the criteria set forth in Section 5.3(b).

"Extraordinary Claim" has the meaning set forth in Section 5.3(a).

"FIFO" means first-in-first-out.

"FIFO Payment Queue" has the meaning set forth in Section 5.1(c).

"FIFO Processing Queue" has the meaning set forth in Section 5.1(a)(1).

"Final Order" has the meaning set forth in the Glossary.

"Glossary" has the meaning set forth in the preamble.

"Indirect Claimant" has the meaning set forth in Section 5.5.

"Individual Review Process" means the individual review process described in Section 5.2(b).

"Initial Claims Filing Date" means on or before the date six months after the Lummus Asbestos PI Trust first distributes or otherwise makes available to claimants the proof of claim form and other claim materials required for filing Lummus Asbestos PI Trust Claims with the Lummus Asbestos PI Trust.

"Lummus" has the meaning set forth in the preamble.

"Lummus Asbestos PI Trust" has the meaning set forth in the Glossary.

"Lummus Asbestos PI Trust Agreement" has the meaning set forth in the preamble.

"Lummus Asbestos PI Trust Claims" has the meaning set forth in the Glossary.

"Lummus Derivative Asbestos Personal Injury Claims" has the meaning set forth in the Glossary.

"Lummus Design and Construction Claims" means Lummus Asbestos PI Trust Claims filed or asserted against Lummus alleging exposure arising from asbestos during the construction of refineries, chemical plants

## PLAN EXHIBIT E — LUMMUS TDP

and other industrial facilities. Most such claims allege that Lummus and/or certain of its Affiliates were involved in either the actual construction of the facilities or the design of the processing plants that allegedly contain asbestos-containing materials. To the extent that any Lummus Asbestos PI Trust Claim filed or otherwise asserted against Lummus does not specifically allege exposure arising from such circumstances, such claim shall be presumed to be a Lummus Feedwater Heater Claim unless designated as a Lummus Design and Construction Claim in the applicable proof of claim form (subject to challenge by the Trustee) or specific evidence to the contrary is provided.

"Lummus Exposure" means exposure to asbestos or asbestos-containing products that occurred on or before December 31, 1982 for which Lummus has legal responsibility as determined by the Lummus Asbestos PI Trust.

"Lummus FCR" has the meaning set forth in the Glossary.

"Lummus Feedwater Heater Claims" means Lummus Asbestos PI Trust Claims filed or asserted against Lummus alleging asbestos exposure arising from feedwater heaters manufactured by Lummus and subsequently installed at third-party facilities. To the extent that any Lummus Asbestos PI Trust Claim filed or otherwise asserted against Lummus does not specifically allege exposure arising from feedwater heaters manufactured by Lummus, such claim shall be presumed to be a Lummus Feedwater Heater Claim unless designated as a Lummus Design and Construction Claim in the applicable proof of claim form (subject to challenge by the Trustee) or specific evidence to the contrary is provided.

"Lummus TDP" has the meaning set forth in the preamble.

"Maximum Annual Payment" has the meaning set forth in Section 2.4.

"Maximum Extraordinary Value" has the meaning set forth in Section 5.3(a).

"Maximum Value" means the maximum value for Disease Levels as set forth in Section 5.2(b)(3).

"Medical/Exposure Criteria" means the medical/exposure criteria for each Disease Level set forth in Section 5.2(a)(3).

"Multiple Exposure Claims" has the meaning set forth in Section 2.1.

"Payment Percentage" has the meaning set forth in Section 4.1.

"Plan" has the meaning set forth in the preamble.

"Reduced Payment Option" has the meaning set forth in Section 2.5.

"Scheduled Value" means the scheduled value for each of the seven Disease Levels eligible for Expedited Review as set forth in Section 5.2(a)(3).

"Significant Occupational Exposure" has the meaning set forth in Section 5.6(b)(2).

"TAC" has the meaning set forth in the Glossary.

"TDP Determined Lummus Asbestos PI Trust Claim" means a Lummus Asbestos PI Trust Claim which qualifies for distributions from the Lummus Asbestos PI Trust under the Lummus TDP.

## PLAN EXHIBIT E — LUMMUS TDP

"Trustee" has the meaning set forth in the Glossary.

### SECTION II

#### Overview

**2.1 Lummus Asbestos PI Trust Goals.** The goal of the Lummus Asbestos PI Trust is to treat all holders of Lummus Asbestos PI Trust Claims equitably. The Lummus TDP furthers that goal by setting forth procedures for processing Lummus Asbestos PI Trust Claims and paying TDP Determined Lummus Asbestos PI Trust Claims generally on an impartial, first-in-first-out ("FIFO") basis, with the intention of paying all holders of TDP Determined Lummus Asbestos PI Trust Claims over time as equivalent a share as possible of the value of such claims based on historical values for substantially similar claims in the tort system. The Lummus TDP classifies Lummus Asbestos PI Trust Claims as either Lummus Feedwater Heater Claims or Lummus Design and Construction Claims. To this end, for each category of claim, the Lummus TDP establishes a schedule of eight asbestos-related Disease Levels, as defined in Section 5.2(a)(3) of the Lummus TDP, all of which have Medical/Exposure Criteria set forth in SubSection 5.2(a)(3), seven of which have Scheduled Values, as set forth in Sections 5.2(a)(3), and five of which have both anticipated Average Values and Maximum Values, set forth in Section 5.2(b)(3), as well as Maximum Extraordinary Values, set forth in Section 5.3(a). The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values, Maximum Values and Maximum Extraordinary Values have all been determined with the intention of achieving a fair allocation of the Lummus Asbestos PI Trust's funds among claimants suffering from different disease processes in light of the most current and accurate medical information available at the time and considering the settlement history of Lummus as well as the rights claimants would have in the tort system absent Lummus' bankruptcy.

A claimant with Lummus Exposure and (a) a claim against Lummus and one or more entities for which Lummus has legal responsibility or (b) a claim against more than one entity for which Lummus has legal responsibility (the "Multiple Exposure Claims"), may assert separate Lummus Asbestos PI Trust Claims against the Lummus Asbestos PI Trust; provided, however, that all such Multiple Exposure Claims must be filed by the claimant at the same time. Under no circumstances, however, shall any claimant receive more than the value of one TDP Determined Lummus Asbestos PI Trust Claim as such value is determined under this Lummus TDP, subject to the applicable Payment Percentage and Maximum Annual Payment, and Claims Payment Ratio limitations, if any, set forth below.

**2.2 Claims Liquidation Procedures.** Lummus Asbestos PI Trust Claims shall be processed and determined based on their place in the FIFO Processing Queue to be established pursuant to Section 5.1(a). The Lummus Asbestos PI Trust shall liquidate efficiently and expeditiously under the Expedited Review Process described in Section 5.2(a) all Lummus Asbestos PI Trust Claims that meet the presumptive Medical/Exposure Criteria of Disease Levels I – V, VII or VIII. Lummus Asbestos PI Trust Claims in Disease Levels II – V, VII or VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the Individual Review Process described in Section 5.2(b). In such a case, notwithstanding that the Lummus Asbestos PI Trust Claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level, the Lummus Asbestos PI Trust can offer the claimant an amount up to the Scheduled Value of the relevant Disease Level if the Lummus Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

Lummus Asbestos PI Trust Claims in Disease Levels IV – VIII tend to raise more complex valuation issues than the Lummus Asbestos PI Trust Claims in Disease Levels I – III. Accordingly, (a) claimants holding Lummus Asbestos PI Trust Claims involving Disease Level VI (Lung Cancer 2) may be liquidated only pursuant to the Individual Review Process and (b) claimants holding Lummus Asbestos PI Trust Claims involving Disease

## PLAN EXHIBIT E — LUMMUS TDP

Levels IV, V, VII or VIII may in addition or alternatively seek to establish a liquidated value for such claim that is greater than the Scheduled Value of the relevant Disease Level by electing the Individual Review Process. However, the liquidated value of a more serious Lummus Asbestos PI Trust Claim involving Disease Level IV, V, VII or VIII that undergoes the Individual Review Process for valuation purposes may be determined to be less than its Scheduled Value. A claim which is Individually Reviewed shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.2(b)(3), unless such Lummus Asbestos PI Trust Claim qualifies as an Extraordinary Claim, in which case its liquidated value shall not exceed the Maximum Extraordinary Value specified in Section 5.3(a).

Based upon Lummus' claims settlement history, applicable tort law and current projections of Lummus Asbestos PI Trust Claims and TDP Determined Lummus Asbestos PI Trust Claims, the Scheduled Values and Maximum Values set forth in Section 5.2(b)(3) have been established for each of the five more serious Disease Levels that are eligible for Individual Review, with the expectation that the combination of settlements at the Scheduled Values and those resulting from the Individual Review Process will result in the Average Values also set forth in that provision.

Certain unresolved disputes over a claimant's medical condition, exposure history and/or the liquidated value of a Lummus Asbestos PI Trust Claim shall be subject to binding or non-binding arbitration, at the election of the claimant, as provided in Section 5.9. Arbitrable disputes with the Lummus Asbestos PI Trust that cannot be resolved by non-binding arbitration may be resolved in the tort system as provided in Sections 5.10 and 7.6. However, if and when a claimant obtains a judgment in the tort system, the judgment will be payable (subject to the Payment Percentage, Maximum Annual Payment, and Claims Payment Ratio provisions set forth below) as provided in Section 7.7.

**2.3 Application of the Payment Percentage.** After the liquidated value of a TDP Determined Asbestos PI Claim (other than a claim involving Disease Level I – Cash Discount Payment) is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, arbitration, or litigation in the tort system, as applicable, the claimant will ultimately receive a pro-rata share of such liquidated value based on the Payment Percentage described in Section 4.1. The Payment Percentage may be adjusted upwards or downwards from time to time by the Lummus Asbestos PI Trust, with the consent of the TAC and the Lummus FCR, to reflect then-current estimates of the Lummus Asbestos PI Trust's assets and its liabilities, as well as the then-estimated value of then-pending and future claims. However, any adjustment to the initial Payment Percentage shall be made only pursuant to Section 4.2. If the Payment Percentage is increased over time, claimants whose claims were liquidated and paid in prior periods under the Lummus TDP will not receive additional payments. Because there is uncertainty in the prediction of both the number and severity of future TDP Determined Lummus Asbestos PI Trust Claims, and the amount of the Lummus Asbestos PI Trust's assets, no guarantee can be made as to what Payment Percentage of a TDP Determined Lummus Asbestos PI Trust Claim's liquidated value will be paid to the holder of any such claim.

**2.4 Lummus Asbestos PI Trust's Determination of the Maximum Annual Payment.** The Lummus Asbestos PI Trust shall estimate or model the amount of cash flow anticipated to be necessary over its entire life to ensure that funds will be available to treat all present and future claimants as similarly as possible. The Lummus Asbestos PI Trust will be empowered to pay up to a certain limited amount during each fiscal year, which amount shall be determined annually by the Trustee with the consent of the TAC and the Lummus FCR (the "Maximum Annual Payment"), and shall be calculated after reserves or other provision for Trust Expenses due in the related fiscal year have been established such that the application of the assets of the Lummus Asbestos PI Trust over its life shall correspond with the needs created by the anticipated flow of TDP Determined Lummus Asbestos PI Trust Claims, taking into account the Payment Percentage provisions set forth in Sections 2.3 and 4.2. The Lummus Asbestos PI Trust's aggregate distributions to all claimants for a particular

## PLAN EXHIBIT E — LUMMUS TDP

fiscal year shall not exceed the Maximum Annual Payment determined for that year. The Maximum Annual Payment shall be initially set at $5,000,000 for the first fiscal year in which claims are paid.

In distributing the Maximum Annual Payment, the Lummus Asbestos PI Trust shall allocate such Maximum Annual Payment between Categories A and B in accordance with the Claims Payment Ratio. Thereafter the amounts allocated to Categories A and B shall be used to satisfy all TDP Determined Lummus Asbestos PI Trust Claims, (subject to a reduction of

the Claims, if applicable, by the Payment Percentage and the Claims Payment Ratio set forth in Section 2.5). In the event there are insufficient funds in any year to pay the total amount of TDP Determined Lummus Asbestos PI Trust Claims in Categories A or B the available funds allocated to a Category of claims shall be paid to the maximum extent possible to claimants in the particular Category based on their place in the FIFO Payment Queue. Disease Level I claims allocated to either Category shall be paid prior to payment of any other claims contained in said Category. Claims in each Category for which there are insufficient funds shall be carried over to the next year and shall remain at the head of the FIFO Payment Queue for their Category.

**2.5 Claims Payment Ratio.** Based upon Lummus' claims settlement history and analysis of present and future claims, a Claims Payment Ratio has been determined which, as of the Effective Date, has been set at 80% for Lummus Asbestos PI Trust Claims involving severe asbestosis and malignancies (Disease Levels IV – VIII) as well as allocated Disease Level I claims ("Category A Claims"), and at 20% for Lummus Asbestos PI Trust Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III) as well as allocated Disease Level I claims ("Category B Claims"). Any Lummus Asbestos PI Trust Claims for Other Asbestos Disease (Disease Level I – Cash Discount Payment) shall be allocated to either Categories A or B based on the highest Disease Level established by the medical evidence submitted for that claim. In each year, after the determination of the Maximum Annual Payment, by application of the Claims Payment Ratio (which percentage shall be modified to correspond with each change, if any, in the Claims Payment Ratio after the Effective Date), 80% of the Maximum Annual Payment will be allocated to, and available to pay liquidated Category A claims and 20% (which percentage shall be modified to correspond with each change, if any, in the Claims Payment Ratio after the Effective Date) will be allocated to, and available to pay, liquidated Category B Claims.

In the event there are insufficient funds in any year to pay the TDP Determined Claims in Category A and/or Category B, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in the particular Category based on their place in the FIFO Payment Queue described in Section 5.1(c). Claims for which there are insufficient funds will be carried to the next year where they will remain at the head of the FIFO Payment Queue. If there are excess funds in either or both Categories because there is an insufficient amount of liquidated claims to exhaust the amount of the Maximum Annual Payment allocated to that Category by application of the Claims Payment Ratio, then the excess funds for either or both Categories will be rolled over and remain dedicated to the respective Category to which they were originally allocated.

The 80%/20% Claims Payment Ratio and its rollover provision shall apply to all Lummus Asbestos PI Trust Claims and shall not be amended until the fifth anniversary of the Effective Date. Thereafter, both the Claims Payment Ratio and its rollover provision shall be continued absent circumstances, such as a significant change in law or medicine, necessitating amendment to avoid a manifest injustice. The accumulation, rollover and subsequent delay in the payment of claims resulting from the application of the Claims Payment Ratio, shall not, in and of itself, constitute such circumstances. Likewise, an increase in the number of Category B Claims beyond those predicted or expected shall not be considered as a factor in deciding whether to reduce the percentage allocated to Category A Claims and provide a corresponding increase in the percentage allocated to Category B Claims.

In considering whether to make any amendments to the Claims Payment Ratio and/or its rollover provisions, the Trustee should consider the reasons for which the Claims Payment Ratio and its rollover provisions were

## PLAN EXHIBIT E — LUMMUS TDP

adopted, the settlement history that gave rise to its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be any need to make an amendment. In that regard, the Trustee should keep in mind the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to claimants. In any event, no amendment to the Claims Payment Ratio may be made without the consent of the TAC and the Lummus FCR pursuant to the consent process set forth in Sections 6.6 and 7.7 of the Lummus Asbestos PI Trust Agreement.

However, the Trustee, with the consent of the TAC and Lummus FCR, may, at any time, offer the option of a reduced payment percentage to claimants in either Category in return for prompt payment (the "Reduced Payment Option").

**2.6 Indemnity and Contribution Claims.** As set forth in Section 5.5, Lummus Derivative Asbestos Personal Injury Claims, if any, will be subject to the same evaluation, categorization and payment provisions of the Lummus TDP as all other Lummus Asbestos PI Trust Claims.

*i*

## SECTION III

### Lummus TDP Administration

**3.1 Trust Advisory Committee and Lummus FCR.** Pursuant to the Plan and the Lummus Asbestos PI Trust Agreement, the Lummus TDP will be administered by the Trustee in consultation with the TAC (which represents the interests of holders of present Lummus Asbestos PI Trust Claims), and the Lummus FCR (who represents the interests of holders of Lummus Asbestos PI Trust Claims that may be asserted in the future). The Trustee shall obtain the consent of the TAC and the Lummus FCR on any amendments to the Lummus TDP pursuant to Section 8.1, and on such other matters as are otherwise required herein or in the Lummus Asbestos PI Trust Agreement. The Trustee shall also consult with the TAC and the Lummus FCR on such matters as are provided below and in Section 3.1(e) of the Lummus Asbestos PI Trust Agreement. The initial members of the TAC and the initial Lummus FCR are identified on the signature pages to the Lummus Asbestos PI Trust Agreement.

**3.2 Consent and Consultation Procedures.** In those circumstances in which consultation or consent is required hereunder, the Trustee will provide written notice to the TAC and the Lummus FCR of the specific amendment or other action that is proposed. The Trustee will not implement such amendment nor take such action unless and until the parties have engaged in the consent process described in Sections 6.6 and 7.7 of the Lummus Asbestos PI Trust Agreement, respectively.

## SECTION IV

### Payment Percentage; Periodic Estimates; De Minimis Distributions

**4.1 Uncertainty of Lummus' Personal Injury Asbestos Liabilities.** As discussed above, there is inherent uncertainty regarding Lummus' total asbestos-related tort liabilities, as well as the total value of the assets available to pay such claims. Consequently, there is inherent uncertainty regarding the amounts that holders of TDP Determined Lummus Asbestos PI Trust Claims will receive. To seek to ensure substantially equivalent treatment of all present and future claims, the Trustee must determine from time to time the percentage of full liquidated value that holders of TDP Determined Lummus Asbestos PI Trust Claims will receive (the "Payment Percentage").

## PLAN EXHIBIT E — LUMMUS TDP

**4.2 Computation of Payment Percentage.** The initial Payment Percentage shall be one hundred percent (100%) of the full liquidated value of a TDP Determined Lummus Asbestos PI Trust Claim calculated on the assumption that the Average Values set forth in Section 5.2(b)(3) will be achieved with respect to existing present claims and projected future claims involving Disease Levels IV – VIII and the Scheduled Values for Disease Levels I – III.

The Payment Percentage shall be subject to change pursuant to the terms of the Lummus TDP and the Lummus Asbestos PI Trust Agreement if the Trustee, with the consent of the TAC and the Lummus FCR, determine that an adjustment is required to assure that the Lummus Asbestos PI Trust will be in a financial position to pay all present and future Lummus Asbestos PI Trust Claims in substantially the same manner. In making any such adjustment, the Trustee, the TAC and the Lummus FCR shall take into account the most current and accurate information and analysis available at the time. No less frequently than once every three years, commencing with the first day of January occurring more than three years after the Plan is consummated, the Trustee shall reconsider the then-applicable Payment Percentage to assure that it is based on accurate, current information. After such reconsideration, the Trustee may change the Payment Percentage if necessary with the consent of the TAC and the Lummus FCR. The Trustee, TAC and FCR shall also reconsider the then-applicable Payment Percentage at shorter intervals if they deem such reconsideration to be appropriate or if requested to do so by the TAC or the Lummus FCR.

The Trustee, TAC and FCR must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future TDP Determined Lummus Asbestos PI Trust Claims, the value and liquidity of the assets then available to the Lummus Asbestos PI Trust for their payment, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of liquidated value to all holders of TDP Determined Lummus Asbestos PI Trust Claims. In this regard, payment percentages applicable to claims allocated to Categories A and B may be different. When making these determinations, the Trustee, TAC and FCR shall exercise common sense and flexibly evaluate all relevant factors.

**4.3 Applicability of the Payment Percentage.** No holder of a TDP Determined Lummus Asbestos PI Trust Claim other than a TDP Determined Lummus Asbestos PI Trust Claim involving Disease Level I (Cash Discount Payment) shall

receive a payment that exceeds the Payment Percentage of the relevant liquidated value of such TDP Determined Lummus Asbestos PI Trust Claim, except as otherwise provided in Section 5.1(c) for TDP Determined Lummus Asbestos PI Trust Claims involving deceased or incompetent claimants for which court approval of the Lummus Asbestos PI Trust's offer is required. TDP Determined Lummus Asbestos PI Trust Claims involving Disease Level I (Cash Discount Payment) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in Section 5.2(a)(3).

Except as provided in the remainder of this paragraph, the Payment Percentage applied to a TDP Determined Lummus Asbestos PI Trust Claim will be the one in effect at the time the Lummus Asbestos PI Trust's offer was made. If at the time of such offer a redetermination of the Payment Percentage has been proposed in writing by the Trustee to the TAC and the Lummus FCR but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage. However, if the proposed Payment Percentage was the lower amount but is not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount, subject to the limitation provided if Section 4.4. Conversely, if the proposed Payment Percentage was the higher amount and is subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount, subject to the limitation in Section 4.4.

## PLAN EXHIBIT E — LUMMUS TDP

### 4.4 De Minimis Distributions.

Notwithstanding any other provision of the Lummus TDP, the Lummus Asbestos PI Trust Agreement or the Plan, the Trustee shall not be required to make distributions to any holder of a TDP Determined Lummus Asbestos PI Trust Claim in an amount less than $100.00, other than pursuant to the Reduced Payment Option. Cash allocated to a TDP Determined Lummus Asbestos PI Trust Claim but withheld from distribution pursuant to this Section 4.4 shall be held by the Trustee for the account of and future distribution to the holder of such TDP Determined Lummus Asbestos PI Trust Claim in the event the holder of such TDP Determined Lummus Asbestos PI Trust Claim becomes entitled to a distribution which, together with all distributions withheld pursuant to this Section 4.4, exceeds $100.00.

### 4.5 Offsets.

If a TDP Determined Lummus Asbestos PI Trust Claim is secured by an appeal bond or is entitled to the benefit of any other security provided by or on behalf of Lummus, the Lummus Asbestos PI Trust shall offset against the liquidated amount of such TDP Determined Lummus Asbestos PI Trust Claim an amount equal to the amount such holder is entitled to receive from, under or in respect of such appeal bond or other security, and the amount the holder of such TDP Determined Lummus Asbestos PI Trust Claim shall receive under the Lummus TDP shall equal the liquidated amount of such claim, first reduced by such offset, and then multiplied by the applicable Payment Percentage.

## SECTION V

### Resolution of TDP Determined Lummus Asbestos PI Trust Claims.

#### 5.1 Ordering, Processing and Payment of Claims.

##### 5.1(a) Ordering of TDP Determined Lummus Asbestos PI Trust Claims.

**5.1(a)(1) Establishment of the FIFO Processing Queue.** The Lummus Asbestos PI Trust will order TDP Determined Lummus Asbestos PI Trust Claims for processing and determination purposes on a FIFO basis except as otherwise provided herein (the "FIFO Processing Queue"). For all TDP Determined Lummus Asbestos PI Trust Claims filed on or before the Initial Claims Filing Date, a claimant's position in the FIFO Processing Queue shall be determined as of the first to occur of (i) the date prior to the Petition Date that the specific Lummus Asbestos PI Trust Claim was either filed against Lummus in the tort system or was actually submitted to Lummus pursuant to an administrative settlement agreement; (ii) the date before the Initial Claims Filing Date that a Lummus Asbestos PI Trust Claim was filed against another defendant in the tort system if at the time such claim was subject to a tolling agreement with Lummus; (iii) the date after the Petition Date on or before the Initial Claims Filing Date that the Lummus Asbestos PI Trust Claim was filed against another defendant in the tort system; or (iv) the date after the Effective Date but on or before the Initial Claims Filing Date that the Lummus Asbestos PI Trust Claim was filed with the Lummus Asbestos PI Trust.

Following the Initial Claims Filing Date, the claimant's position in the FIFO Processing Queue shall be determined by the date the claim was filed with the Lummus Asbestos PI Trust. If any claims are filed on the same date, the claimant's position in the FIFO Processing Queue vis-à-vis the other claim filed on the same date shall be determined by the date of the diagnosis of the asbestos-related disease. If any claims are filed and diagnosed on the same date, the claimant's position in

the FIFO Processing Queue vis-à-vis the other claim filed on the same date shall be determined by the claimant's date of birth, with older claimants given priority over younger claimants.

**PLAN EXHIBIT E — LUMMUS TDP**

    **5.1(a)(2) Effect of Statutes of Limitations and Repose.** To be eligible for a place in the FIFO Processing Queue, a Lummus Asbestos PI Trust Claim must meet either (i) for claims first filed in the tort system against Lummus prior to the Petition Date, the applicable federal and state statutes of limitation and repose that was in effect at the time of the filing of the claim in the tort system, or (ii) for claims not filed against Lummus in the tort system prior to the Petition Date, the applicable statutes of limitation and repose that was in effect at the time of the filing with the Lummus Asbestos PI Trust. However, the running of the relevant statutes of limitation shall be tolled as of the earliest of (A) the actual filing of the claim against Lummus prior to the Petition Date, whether in the tort system or by submission of the claim to Lummus pursuant to an administrative settlement agreement; (B) the filing of the claim against another defendant in the tort system prior to the Petition Date if the claim was tolled against Lummus at the time by an agreement or otherwise; (C) the filing of a claim after the Petition Date but prior to the Initial Claims Filing Date against another defendant in the tort system; (D) the filing of a proof of claim in the Chapter 11 Case prior to the Effective Date; or (E) the filing of a proof of claim with the requisite supporting documentation with the Lummus Asbestos PI Trust within three years following the Effective Date.

    If a Lummus Asbestos PI Trust Claim meets any of the tolling provisions described in (A), (B), (C) or (D) of the preceding sentence, it will be treated as timely filed regardless of the date that it is actually filed with the Lummus Asbestos PI Trust. Also, any claims that were first diagnosed after the Petition Date, irrespective of the application of any relevant statutes of limitation or repose, must be filed with the Lummus Asbestos PI Trust within three (3) years after the date of diagnosis or within three (3) years after the Initial Claims Filing Date, whichever occurs later.

    **5.1(b) Processing of Lummus Asbestos PI Trust Claims.** As a general practice, the Lummus Asbestos PI Trust will review its claims files on a regular basis and notify all claimants whose claims are likely to come up in the FIFO Processing Queue in the near future.

    **5.1(c) Payment of TDP Determined Lummus Asbestos PI Trust Claims.** Lummus Asbestos PI Trust Claims involving Disease Level I, Category A Claims and Category B Claims that have been liquidated by the Expedited Review Process as provided in Section 5.2(a), by the Individual Review Process as provided in Section 5.2(b), by arbitration as provided in Section 5.9, or in the tort system as provided in Sections 5.10 and 7.6, shall be paid in FIFO order based on the date their liquidation became final (the "FIFO Payment Queue"). All such payments are subject to the Maximum Annual Payment and the Claims Payment Ratio. In addition, all TDP Determined Lummus Asbestos PI Trust Claims (except Disease Level I Claims) shall also be subject to the Payment Percentage. The Trustee, with the consent of the TAC and the Lummus FCR, may offer a Reduced Payment Option to holders of either Category A Claims or Category B Claims in return for more prompt payment (the "Reduced Payment Option").

    Where the claimant is deceased or incompetent, and the settlement and payment of his or her TDP Determined Lummus Asbestos PI Trust Claim must be approved by a court of competent jurisdiction prior to acceptance of an offer made by the Lummus Asbestos PI Trust on the claim by the claimant's representative, such offer shall remain open so long as proceedings before that court remain pending, provided that the Lummus Asbestos PI Trust has been furnished with evidence that the settlement offer has been submitted to such court for approval. If the offer is ultimately approved by the court and accepted by the claimant's representative, the Lummus Asbestos PI Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

    If any claims are liquidated on the same date, each such claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of such claimant's asbestos- related disease, with earlier diagnosis dates given priority over later diagnosis dates. If any claims are liquidated on the same date and the respective holders' asbestos-related diseases were diagnosed on the same date, the position of those claims in the

**PLAN EXHIBIT E — LUMMUS TDP**

FIFO Payment Queue shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

    **5.2 Resolution of Unliquidated Lummus Asbestos PI Trust Claims.** Within six months after the establishment of the Lummus Asbestos PI Trust, the Trustee, with the consent of the TAC and the Lummus FCR, shall adopt procedures for reviewing and liquidating all unliquidated Lummus Asbestos PI Trust Claims, which shall include deadlines for processing such claims. Such procedures shall also require claimants seeking resolution of unliquidated Lummus Asbestos PI Trust Claims to file a proof of claim form, together with the required supporting documentation, in accordance with the provisions

of Sections 6.1 and 6.2. The Lummus Asbestos PI Trust shall make reasonable efforts to provide an initial response to the claimant within six months of receiving the proof of claim form.

All claims filed with the Lummus Asbestos PI Trust shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, with all lower Disease Levels for which the claim then qualifies or may qualify in the future subsumed into the higher Disease Level for both processing and payment purposes. Upon filing of a proof of claim form established pursuant to Section 6.1, and all other Claims Materials required to be filed in accordance with the instructions delivered by the Lummus Asbestos PI Trust pursuant to Section VI, the claim shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Section 5.1(a), and shall be liquidated either under the Expedited Review Process described in Section 5.2(a) or, in certain circumstances, the Individual Review Process described in Section 5.2(b).

### 5.2(a) Expedited Review Process.

**5.2(a)(1) In General.** The Lummus Asbestos PI Trust's Expedited Review Process is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating Lummus Asbestos PI Trust Claims (except those involving Lung Cancer 2—Disease Level VI) which can easily be verified by the Lummus Asbestos PI Trust as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level. Expedited Review thus provides claimants with a substantially less burdensome process for pursuing their claims than the Individual Review Process described in Section 5.2(b). Expedited Review is also intended to provide a fixed and certain liquidated amount to qualifying claimants.

Claims that undergo Expedited Review and meet the presumptive Medical/Exposure Criteria for the relevant Disease Level shall be assigned the Scheduled Value for such Disease Level set forth in Section 5.2(a)(3). All claims liquidated by Expedited Review shall be subject to the Maximum Annual Payment and the Claims Payment Ratio. All claims liquidated by Expedited Review, other than Disease Level I—Other Asbestos Disease, shall be subject to the Payment Percentage. Claimants holding claims that cannot be liquidated by Expedited Review because they do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may elect the Lummus Asbestos PI Trust's Individual Review Process set forth in Section 5.2(b).

**5.2(a)(2) Claims Processing under Expedited Review.** All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the Lummus Asbestos PI Trust's proof of claim form described in Section 6.1. As a proof of claim form is reached in the FIFO Processing Queue, the Lummus Asbestos PI Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review, and shall advise the claimant of its determination. If a Disease Level is determined, the Lummus Asbestos PI Trust shall tender to the claimant an offer of payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage. If the claimant accepts the Scheduled Value, the claim shall be placed in the FIFO Payment Queue, following which the Trust shall disburse payment subject to the limitations of the Maximum Annual Payment, the Payment Percentage and the Claims Payment Ratio, if any.

## PLAN EXHIBIT E — LUMMUS TDP

In the event a personal representative or authorized agent submits a claim to the Lummus Asbestos PI Trust arising under the Alabama Wrongful Death Statute and the Claimant's Jurisdiction, as otherwise defined herein, would be the State of Alabama, then for purposes of evaluating such claim, the Lummus Asbestos PI Trust shall treat the Claimant's Jurisdiction as being the Commonwealth of Pennsylvania, and such claimant's damages shall be evaluated by the Lummus Asbestos PI Trust pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles or the provisions of 5.2(b)(2) defining Claimant's Jurisdiction.

**5.2(a)(3) Disease Levels, Scheduled Values and Medical/Exposure Criteria.** The eight disease levels covered by the Lummus TDP set forth below (each, a "Disease Level") together with the medical/exposure criteria for each such Disease Level (as applicable, the "Medical/Exposure Criteria"), are set forth below:

| Disease Level | Medical/Exposure Criteria |
| --- | --- |
| Mesothelioma (Level VIII) | (1) Diagnosis[1] of mesothelioma; and (2) Lummus Exposure.[2] |

Lung Cancer 1 (Level VII)

(1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease[3], (2) six months Lummus Exposure (3) Significant Occupational Exposure[4], and (4) supporting medical documentation establishing asbestos exposure as a substantial contributing factor in causing the lung cancer in question.

Lung Cancer 2 (Level VI)

(1) Diagnosis of a primary lung cancer, (2) Lummus Exposure, and (3) supporting medical documentation establishing asbestos exposure as a substantial contributing factor in causing the lung cancer in question. Lung Cancer 2 (Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer 1 (Level VII) claims. All claims in this Disease Level will be individually evaluated. The estimated likely average of the individual evaluation awards for this category is $1,000.00 for Lummus Feedwater Heater Claims and $5,000.00 for Lummus Design and Construction

---

[1]   The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of the TDP are set forth in Section 5.6.

[2]   The term "Lummus Exposure" is defined in Section 5.6(b)(3).

[3]   Evidence of "Bilateral Asbestos-Related Nonmalignant Disease" for purposes of meeting the criteria for establishing Disease Levels I, II, V, and VII, means a report submitted by a qualified physician stating that the claimant has or had an X-ray reading of 1/0 or higher on the ILO scale, or bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification (or, solely for claims filed against CE or another asbestos defendant in the tort system prior to the Petition Date, if an ILO reading is not available, a chest x-ray reading that indicates bilateral interstitial fibrosis, bilateral interstitial markings, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with, or compatible with, a diagnosis of asbestos-related disease).

[4]   The term "Significant Occupational Exposure" is defined in Section 5.6(b)(2) .

## PLAN EXHIBIT E — LUMMUS TDP

| Disease Level | Medical/Exposure Criteria |
| --- | --- |
| | Claims, with such awards capped at $4,000.00 for Lummus Feedwater Heater Claims and $30,000.00 for Lummus Design and Construction Claims unless the claim qualifies for Extraordinary Claim treatment. |
| | Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Non-malignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims will be treated as having any significant value, especially if the claimant is also a Smoker.[5] In any event, no presumption of validity will be available for any claims in this category. |
| Other Cancer (Level V) | (1) Diagnosis of a primary colo-rectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months cumulative Lummus Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a substantial contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Level IV) | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos[6], plus (a) TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months Lummus |

Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a substantial contributing factor in causing the pulmonary deficit in question.

[5]   here is no distinction between Non-Smokers and Smokers for either Lung Cancer (Level VII) or Lung Cancer (Level VI), although a claimant who meets the more stringent requirements of Lung Cancer (Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the PI Trust. In such a case, it is anticipated that the liquidated value of the claim might well exceed the Scheduled Value for Lung Cancer (Level VII) shown above. "Non-Smoker" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

[6]   Proof of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982) and Pulmonary Function testing.

## PLAN EXHIBIT E — LUMMUS TDP

| Disease Level | Medical/Exposure Criteria |
|---|---|
| Asbestosis/Pleural Disease (Level III) | Diagnosis of asbestosis with ILO of 1/0 or greater or asbestosis determined by pathology, or Bilateral Asbestos Related Non-malignant Disease of B2 or greater, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months Lummus Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a substantial contributing factor in causing the pulmonary deficit in question. |
| Asbestosis/Pleural Disease (Level II) | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, and (2) six months Lummus Exposure, and (3) five years cumulative occupational exposure to asbestos |
| Other Asbestos Disease (Level I -Cash Discount Payment) | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy (except mesothelioma), and (2) Lummus Exposure. |

These Disease Levels and Medical/Exposure Criteria shall apply to all Lummus Asbestos PI Trust Claims filed with the Lummus Asbestos PI Trust on or before the Initial Claims Filing Date provided in Section 5.1. The Scheduled Values for each of seven Disease Levels eligible for Expedited Review (as applicable, the "Scheduled Value") determined by the applicable conduct of Debtor which formulates the liability, are set forth in 5.2(b)(3). Thereafter, with the consent of the TAC and the Lummus FCR, the Trustee may add to, change, or eliminate Disease Levels, Scheduled Values, or Medical/Exposure Criteria; develop subcategories of Disease Levels, Scheduled Values or Medical/Exposure Criteria; or determine that a novel or exceptional asbestos personal injury claim is compensable even though it does not meet the Medical/Exposure Criteria for any of the then-current Disease Levels.

### 5.2(b) Individual Review Process

#### 5.2(b)(1) In General.

5.2(b)(1)(A) **Disease Levels II – III.** The Lummus Asbestos PI Trust's Individual Review Process provides a claimant with an opportunity for individual consideration and evaluation of a Lummus Asbestos PI Trust Claim that fails to meet the presumptive Medical/Exposure Criteria for Disease Levels II – III. In such a case, the Lummus Asbestos PI Trust shall either deny the claim, or, if the Lummus Asbestos PI Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the Lummus Asbestos PI Trust may offer the claimant a liquidated value amount up to the Scheduled Value for that Disease Level, unless the claim qualifies as an Extraordinary Claim as defined in Section 5.3(a), in which case the Lummus Asbestos PI Trust may offer the claimant more than the Scheduled Value for that Disease Level but such offer of liquidated value shall not exceed the Maximum Extraordinary Value for such claim.

**5.2(b)(1)(B) Disease Levels IV – VIII.** Claimants holding Lummus Asbestos PI Trust Claims in the more serious Disease Levels IV, V, VII or VIII shall be eligible to seek, and claimants holding Lummus Asbestos PI Trust Claims in Disease Level VI shall be required to undergo, Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence. The Individual Review Process is intended

## PLAN EXHIBIT E — LUMMUS TDP

to result in payments equal to the full liquidated value for each claim multiplied by the Payment Percentage; however, the liquidated value of any Lummus Asbestos PI Trust Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review. The liquidated value for a claim involving Disease Levels IV – VIII shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.2(b)(3), unless the claim meets the requirements of an Extraordinary Claim as defined in Section 5.3(a), in which case the Lummus Asbestos PI Trust may offer the claimant more than the Scheduled Value for that disease level but such offer shall not exceed the Maximum Extraordinary Value for such claims. Because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants electing to undergo the Individual Review Process will necessarily be paid the liquidated value of their Lummus Asbestos PI Trust Claims later than would have been the case had the claimant elected the Expedited Review Process.

**5.2(b)(2) Valuation Factors to be Considered in Individual Review.** The Lummus Asbestos PI Trust shall liquidate the value of each Individual Review claim based on the historic liquidated values of other similarly situated claims in the tort system for the same Disease Level. The Lummus Asbestos PI Trust will thus take into consideration the factors that affect the severity of damages and values within the tort system including, but not limited to (i) the degree to which the characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability, employment status, disruption of household, family or recreational activities, dependencies, special damages, and pain and suffering; (iii) evidence that the claimant's damages were (or were not) caused by asbestos exposure, including Lummus Exposure (for example, alternative causes, and the strength of documentation of injuries); (iv) the industry of exposure; and (v) settlements, verdicts and the claimant's and other law firms' experience in the Claimant's Jurisdiction for similarly situated claims.

**5.2(b)(3) Scheduled, Average and Maximum Values.** For claims involving Severe Asbestosis (Disease Level IV) or malignancies (Disease Levels V – VIII) the "Scheduled Value", "Average Value" and "Maximum Value" for each such claim are, respectively, as set forth below:

## Lummus Design and Construction Claims

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII) | $25,000 | $60,000 | $400,000 |
| Lung Cancer 1 (Level VII) | $7,500 | $12,500 | $75,000 |
| Lung Cancer 2 (Level VI) | Subject to Individual Review | $5,000 | $30,000 |
| Other Cancer (Level V) | $2,500 | $5,000 | $15,000 |
| Severe Asbestosis (Level IV) | $7,500 | $12,500 | $75,000 |
| Asbestosis (Level III) | $3,000 | $ Scheduled Value | $ Scheduled Value |
| Asbestosis/ Pleural Disease (Level II) | $2,000 | $ Scheduled Value | $ Scheduled Value |
| Other Asbestos Disease (Cash Discount Payment) (Level I) | $200 | none | none |

## PLAN EXHIBIT E — LUMMUS TDP

## Lummus Feedwater Heater Claims

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma (Level VIII) | $1,000 | $6,000 | $25,000 |
| Lung Cancer 1 (Level VII) | $1,000 | $2,000 | $8,000 |
| Lung Cancer 2 (Level VI) | Subject to Individual Review | $1,000 | $4,000 |
| Other Cancer (Level V) | $550 | $700 | $1,000 |
| Severe Asbestosis (Level IV) | $1,000 | $2,000 | $8,000 |
| Asbestosis (Level III) | $400 | $ Scheduled Value | $ Scheduled Value |

| | | | |
|---|---|---|---|
| Asbestosis/ Pleural Disease (Level II) | $200 | $ Scheduled Value | $ Scheduled Value |
| Other Asbestos Disease (Cash Discount Payment) (Level I) | $100 | none | none |

The applicable Average Values and Maximum Values shall apply to all Lummus Asbestos PI Trust Claims filed with the Lummus Asbestos PI Trust on or before the Initial Claims Filing Date as provided in Section 5.1. Thereafter, the Lummus Asbestos PI Trust, with the consent of the TAC and the Lummus FCR pursuant to Sections 6.6 and 7.7 of the Lummus Asbestos PI Trust Agreement, may change these valuation amounts for good cause and consistent with the amendment provisions contained in Section 8.1.

### 5.3 Categorizing Claims as Extraordinary and/or Exigent Hardship

**5.3(a) Extraordinary Claims.** "Extraordinary Claim" means a TDP Determined Lummus Asbestos PI Trust Claim that otherwise satisfies the Medical Criteria for any of Disease Levels IV – VIII, that is held by a claimant whose exposure to asbestos was at least 75% the result of Lummus Exposure as defined in Section 5.6(b)(3), and for which there is little likelihood of the claimant receiving a substantial recovery elsewhere. All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to an amount equal to five (5) times the Maximum Value set forth in Section 5.2(b)(3) for claims qualifying for Disease Levels IV -V, VII and VIII, and five (5) times the Average Value for claims in Disease Level VI (in each case, the "Maximum Extraordinary Value"), multiplied by the applicable Payment Percentage. An Extraordinary Claim, following its liquidation, shall be placed in the FIFO Payment Queue for purposes of payment based on its date of liquidation, subject to the Maximum Annual Payment and the Claims Payment Ratio.

**5.3(b) Exigent Hardship Claims.** Notwithstanding any other provision herein, at any time the Lummus Asbestos PI Trust may liquidate and pay certain Lummus Asbestos PI Trust Claims that qualify as Exigent Hardship Claims (as defined below), and such claims may be considered separately no matter what the order of processing otherwise would have been under the Lummus TDP. An Exigent Hardship Claim, following its liquidation, shall be placed at the head of the FIFO Payment Queue for purposes of payment, subject to the Maximum Annual Payment and the Claims Payment Ratio described above. A Lummus Asbestos PI Trust Claim qualifies for payment as an "Exigent Hardship Claim" if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V – VIII), and the Lummus Asbestos PI Trust, in its sole discretion, determines that (a) the claimant needs financial assistance on an immediate basis based on the claimant's expenses and all sources of available income, and (b) there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

**5.4 Certain Derivative Claimants.** If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant may seek Individual Review of his or her claim pursuant to Section 5.2(b). In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under the Lummus TDP that would

### PLAN EXHIBIT E — LUMMUS TDP

have been applicable had that person filed a direct claim against the Lummus Asbestos PI Trust. In addition, the derivative claimant must establish that he or she is suffering from one of the eight Disease Levels described in Section 5.2(b)(3), that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person experienced Lummus Exposure as defined in Section 5.6(b)(3), and that such Lummus Exposure was a cause of the claimed disease. The proof of claim form to be provided by the Lummus Asbestos PI Trust shall include an additional section for Lummus Derivative Asbestos Personal Injury Claims. All liquidation and payment rights and limitations under the Lummus TDP shall be applicable to such claims.

**5.5 Lummus Derivative Asbestos Personal Injury Claims For Contribution/Indemnification.** Lummus Derivative Asbestos Personal Injury Claims that are asserted against the Lummus Asbestos PI Trust shall be treated as presumptively valid and paid by the Lummus Asbestos PI Trust, subject to the Maximum Annual Payment, Claims Payment Ratio and applicable Payment Percentage, if (a) such claim satisfied the requirements of the Bar Date established by the Bankruptcy Court for Lummus Derivative Asbestos Personal Injury Claims, if any, and is not otherwise disallowed under Section 502(e) of the Bankruptcy Code, or subordinated by Section 509(c) of the Bankruptcy Code, and (b) the holder of such claim (the "Indirect Claimant") establishes to the satisfaction of the Trustee that (i) the Indirect Claimant has paid in full the liability and obligations of the Trust to the individual to whom the PI Trust would otherwise have had a liability or obligation under the Lummus TDP (the "Direct Claimant"), (ii) the Direct Claimant and the Indirect Claimant have forever released the Trust from all claims by the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitation or repose or by other applicable law. In no event shall any Indirect Claimant have any rights against the Lummus Asbestos PI Trust superior to the rights of the related Direct Claimant against the Lummus Asbestos PI Trust, including any rights with respect to the timing, amount or manner of payment. In addition, no Lummus Derivative Asbestos Personal Injury Claim may be liquidated

and paid in an amount that exceeds what the Indirect Claimant actually paid to the related Direct Claimant in respect of such Direct Claimant's claim against the Lummus Asbestos PI Trust.

To establish a presumptively valid Lummus Derivative Asbestos Personal Injury Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim against the Lummus Asbestos PI Trust must also have been liquidated by the Indirect Claimant by settlement (and it must be established that such settled claim is valid under applicable state law) or a Final Order, and has been paid by the Indirect Claimant. In any case where the Indirect Claimant has satisfied the claim of a Direct Claimant against the Lummus Asbestos PI Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Lummus Asbestos PI Trust a release in form and substance reasonably satisfactory to the Trustee. The Trustee may develop and approve a separate proof of claim form for such claims.

Provided an Indirect Claimant supplies a release in a substance and form acceptable to the Trustee, but cannot meet the presumptive requirements set forth above, the Indirect Claimant may request that the Lummus Asbestos PI Trust review the indirect Asbestos Trust Claim individually to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has paid all or a portion of a liability or obligation that the Lummus Asbestos PI Trust had to the Direct Claim as of the Effective Date of the Lummus TDP. If the Indirect Claimant can show that it has paid all or a portion of a liability or obligation that the Lummus Asbestos PI Trust had on the Direct Claim, then the Indirect Claimant shall have a claim in the amount so paid, which shall be satisfied subject to the then applicable Payment Percentage, Maximum Annual Payment and claims Payment Ratio. However, in no event shall such reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled. Further, to the extent the Lummus Asbestos PI Trust has paid an Indirect Claim, the full liquidated amount of such Indirect Claim shall be treated as an offset to or reduction of the full liquidated amount of any Lummus Asbestos PI Trust Claim that might be subsequently asserted by the Direct Claimant against the Lummus Asbestos PI Trust.

## PLAN EXHIBIT E — LUMMUS TDP

Any dispute between the Lummus Asbestos PI Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the arbitration procedures as described herein and adopted by the Lummus Asbestos PI Trust. If such dispute is not resolved by said arbitration procedures, the Indirect Claimant may litigate the dispute in the tort system as set forth in Sections 5.10 and 7.6. The Trustee may develop and approve a separate proof of claim form for such Lummus Derivative Asbestos Personal Injury Claims.

Lummus Derivative Asbestos Personal Injury Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Court shall be processed in accordance with procedures to be developed and implemented by the Trustee, which procedures (a) shall determine the validity, allowability and enforceability of such claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of such claims as the Lummus Asbestos PI Trust would have afforded the holders of the underlying valid Lummus Asbestos PI Trust Claims.

### 5.6 Evidentiary Requirements

#### 5.6(a) Medical Evidence.

**5.6(a)(1) In General.** All diagnoses of Disease shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least 10 years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year latency period. All diagnoses shall also be based upon a physical examination of the claimant by the physician providing the diagnosis, and all diagnoses of a non-malignant disease shall be based on an X-ray reading by a certified B-reader or a CT scan and on full pulmonary function tests. A finding by a physician that a claimant's disease is "consistent with" or "compatible with" asbestosis will not alone be considered by the Lummus Asbestos PI Trust as a diagnosis.

**5.6(a)(1)(A). Disease Levels I – IV.** Except for claims filed against Lummus or another asbestos defendant in the tort system prior to the Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I – IV) shall be based (i) in the case of a claimant who was living at the time the claim is filed, upon (A) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; (B) an X-ray reading by a certified B-reader or a CT scan, and (C) pulmonary function testing[7] if the claim involves Asbestosis/Pleural Disease (Level III) or Severe Asbestosis (Level IV),[8] and (ii) in the case of a claimant who was deceased at the time the claim is filed, upon (A) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease if available, (B) pathological evidence and (C) a X-ray reading by a certified B reader if available.

**5.6(a)(1)(B). Disease Levels V – VIII.** Except for claims filed against Lummus or another asbestos defendant in the tort system prior to the Petition Date, diagnoses of an asbestos-related malignancy (Disease Levels V – VIII)

shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease unless deceased, or (ii) on a diagnosis of such a malignant Disease Level by a board-certified pathologist.

---

[7]    "Pulmonary Function Testing" shall mean spirometry testing that is in material compliance with the quality criteria established by the American Thoracic Society ("ATS") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration.

[8]    All diagnoses of Asbestos/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy. However, the PI Trust may rebut such presumptions.

## PLAN EXHIBIT E — LUMMUS TDP

**Section 5.6(a)(1)(C). Treatment of Certain Pre-Petition Claims.** The exceptions provided in Sections 5.6(a)(1)(A) and (B) for claims filed against Lummus or another asbestos defendant in the tort system prior to the Petition Date shall not apply if (i) the holder of such a claim has available the medical evidence in question, (ii) the holder has filed such medical evidence with another asbestos-related personal injury settlement trust that requires the holder to provide such medical evidence and such medical evidence is made available by such other trust to the Lummus Asbestos PI Trust, or (iii) the Lummus Asbestos PI Trust determines that the claimant could reasonably obtain and submit the medical evidence required.

**5.6(a)(2) Credibility of Medical Evidence.** Before making any payment to a claimant, the Lummus Asbestos PI Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The Lummus Asbestos PI Trust may require the submission of x-rays, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedure to assure that such evidence is reliable.

In addition, claimants who otherwise meet the requirements of the Lummus TDP for payment of a TDP Determined Lummus Asbestos PI Trust Claim shall be paid irrespective of the results in any litigation at any time between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system, other than any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by either the claimant or the Lummus Asbestos PI Trust in any Individual Review proceeding conducted pursuant to 5.2(b) or any Extraordinary Claim proceeding conducted pursuant to 5.3(a).

### 5.6(b) Exposure Evidence

**5.6(b)(1) In General.** As set forth above in Section 5.2(a)(3), to qualify for any Disease Level, the claimant must demonstrate some Lummus Exposure (which, in the case of Lummus Derivative Asbestos Personal Injury Claimants, shall be Lummus Exposure in respect of the Direct Claimant). Claims based on conspiracy theories that involve no Lummus Exposure are not compensable under the Lummus TDP. To meet the presumptive exposure requirements of Expedited Review set forth in Section 5.2(a)(3), the claimant must show (i) for all Disease Levels, Lummus Exposure as defined in Section 5.6(b)(3); (ii) for Asbestos/Pleural Disease Level II, six months Lummus Exposure, plus five years cumulative occupational asbestos exposure; and (iii) for Asbestosis/Pleural Disease (Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level V) or Lung Cancer 1 (Disease Level VII), the claimant must show six months Lummus Exposure, plus Significant Occupational Exposure to asbestos as defined in Section 5.6(b)(2). If the claimant cannot meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited Review, the claimant may seek Individual Review of his or her Lummus Exposure pursuant to Section 5.2(b).

**5.6(b)(2) Significant Occupational Exposure.** "Significant Occupational Exposure" means employment for a cumulative period of at least five years in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to raw asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) and/or (c).

**5.6(b)(3) Lummus Exposure.** The claimant must demonstrate meaningful and credible exposure to asbestos or asbestos-containing products that occurred on or before December 31, 1982 for which Lummus has legal responsibility. The Lummus Asbestos PI Trust shall consider the meaningful and credible evidence presented by the claimant, including an affidavit of the claimant, an affidavit of a co-worker or the affidavit of a

**PLAN EXHIBIT E — LUMMUS TDP**

family member in the case of a deceased claimant (providing the Lummus Asbestos PI Trust finds such evidence reasonably reliable), invoices, employment, construction or similar records, or other credible evidence. The Lummus Asbestos PI Trust may also require submission of other or additional evidence of exposure when it deems such to be necessary. The specific exposure information required by the Lummus Asbestos PI Trust to process a claim under either Expedited Review or Individual Review shall be set forth on the proof of claim form established by the Lummus Asbestos PI Trust pursuant to Section 6.1 for use by claimants in making a claim against the Lummus Asbestos PI Trust.

**5.7 Claims Audit Program.** The Lummus Asbestos PI Trust with the consent of the TAC and the Lummus FCR may develop methods for auditing the reliability of medical evidence, including additional reading of x-rays and verification of pulmonary function tests, as well as the reliability of evidence of Lummus Exposure. In the event that the Lummus Asbestos PI Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Lummus Asbestos PI Trust, it may decline to accept additional evidence from such provider.

Further, in the event that an audit reveals that fraudulent information has been provided to the Lummus Asbestos PI Trust, the Lummus Asbestos PI Trust may penalize any claimant or claimant's attorney by disallowing the Lummus Asbestos PI Trust Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' Lummus Asbestos PI Trust Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. §152, and seeking sanctions from the Bankruptcy Court.

**5.8 Second Disease (Malignancy) Claims.** The holder of a claim involving a non-malignant asbestos-related disease (Disease Levels I through IV) may file a new claim for a malignant disease (Disease Levels V – VIII) that is subsequently diagnosed. Any additional payments to which such claimant may be entitled with respect to such malignant asbestos-related disease shall not be reduced by the amount paid for the non-malignant asbestos-related disease.

**5.9 Arbitration.**

**5.9(a) Establishment of Arbitration Procedures.** The Lummus Asbestos PI Trust, with the consent of the TAC and the Lummus FCR, shall institute binding and non-binding arbitration procedures in accordance with the arbitration rules promulgated by the Trustee, with the consent of the TAC and the Lummus FCR, for resolving disputes concerning (i) whether a pre-petition settlement agreement with Lummus is binding and judicially enforceable in the absence of a Final Order of the Bankruptcy Court determining the issues, (ii) whether the Lummus Asbestos PI Trust's rejection or denial of a Lummus Asbestos PI Trust Claim was proper, or (iii) whether evidence concerning the claimant's medical condition or exposure history meets the requirements of the Lummus TDP for purposes of categorizing a claim involving Disease Levels I – VIII or any other category established hereunder. Binding and non-binding arbitration shall also be available for resolving disputes over the liquidated value of a claim involving Disease Levels IV – VIII.

In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in Section 5.6. In the case of an arbitration involving the liquidated value of a claim involving Disease Levels IV – VIII, the arbitrator shall consider the same valuation factors that are set forth in Section 5.2(b)(2). With respect to all claims eligible for arbitration, the claimant, but not the Lummus Asbestos PI Trust, may elect either non-binding or binding arbitration. The Arbitration Rules shall be promulgated, and may be modified from time to time, by the Lummus Asbestos PI Trust with the consent of the TAC and the Lummus FCR. Such amendments may include adoption of mediation procedures as well as establishment of a panel to review Extraordinary Claims pursuant to Section 5.3(a).

**PLAN EXHIBIT E — LUMMUS TDP**

**5.9(b) Claims Eligible for Arbitration.** In order to be eligible for arbitration, the claimant must first complete the Individual Review Process with respect to the disputed issue. Individual Review will be treated as completed for these purposes when an Lummus Asbestos PI Trust Claim has been individually reviewed by the Lummus Asbestos PI Trust and either (a) the Lummus Asbestos PI Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the Lummus Asbestos PI Trust of the rejection in writing or (b) the Lummus Asbestos PI Trust has rejected the claim.

**5.9(c) Limitations on and Payment of Arbitration Awards.** In the case of a Lummus Asbestos PI Trust Claim involving Disease Levels I—III, the arbitrator shall not return an award in excess of the Scheduled Value for such claim. In the case of a non-Extraordinary Claim involving Disease Levels IV – VIII, the arbitrator shall not return an award in excess

of the Maximum Value for the appropriate Disease Level as set forth in Section 5.2(a)(3), and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the Maximum Extraordinary Value for such a claim as set forth in Section 5.3(a). A claimant who submits to arbitration and who accepts the arbitral award will receive payments in the same manner as one who accepts the Lummus Asbestos PI Trust's original valuation of the claim.

**Section 5.10 Litigation**. Claimants who elect non-binding arbitration and then reject their arbitral awards retain the right to seek relief in the tort system pursuant to Section 7.6 below. However, a claimant shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the Lummus Asbestos PI Trust only as provided in Section 7.7.

## SECTION VI

### Claims Materials

**6.1 Claims Materials**. The Lummus Asbestos PI Trust shall prepare suitable and efficient claims materials ("Claims Materials"), and shall provide such Claims Materials upon a written request to the Lummus Asbestos PI Trust. The proof of claim form to be submitted to the Lummus Asbestos PI Trust shall include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure. A copy of the proof of claim form to be used initially by the Lummus Asbestos PI Trust for unliquidated Lummus Asbestos PI Trust Claims will be provided by the Lummus Asbestos PI Trust promptly after the Effective Date of the Plan. The proof of claim form shall require the claimant to designate whether such person's Lummus Asbestos PI Trust Claim is a Lummus Design and Construction Claim or a Lummus Feedwater Heater Claim; provided, however, that the Trustee shall have the right to challenge any such designation. The proof of claim form may be changed and additional proof of claim forms may be developed by the Lummus Asbestos PI Trust with the consent of the TAC and the Lummus FCR.

**6.2 Content of Claims Materials.** The Claims Materials shall include a copy of the Lummus TDP, such instructions as the Trustee shall approve, and a proof of claim form. If feasible, the forms used by the Lummus Asbestos PI Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations. Instead of collecting some or all of the claims information from a claimant or the claimant's attorney, the Lummus Asbestos PI Trust may also obtain such information from electronic data bases maintained by any other asbestos claims resolution organization. However, the Lummus Asbestos PI Trust shall inform the claimant that it plans to obtain information as available from such other organizations and may do so unless the claimant objects in writing or provides such information directly to the Lummus Asbestos PI Trust. If requested by the claimant, the Lummus Asbestos PI Trust shall accept information provided electronically. The claimant may, but will not be required to, provide the Lummus Asbestos PI Trust with evidence of recovery from other asbestos claims resolution organizations; provided, however, that any person asserting that their claim qualifies as an Exigent Hardship Claim must certify to the Lummus Asbestos PI

## PLAN EXHIBIT E — LUMMUS TDP

Trust the aggregate amount such person has recovered in respect of such claim from other asbestos claims resolution organizations.

**6.3 Withdrawal of Claims**. A claimant may withdraw a Lummus Asbestos PI Trust Claim at any time upon written notice to the Lummus Asbestos PI Trust and subsequently file another claim without affecting the status of the claim for statute of limitations purposes, but any such claim filed after withdrawal shall be given a place in the FIFO Processing Queue based the date of such subsequent filing. Except for Lummus Asbestos PI Trust Claims held by representatives of deceased or incompetent claimants for which court approval of the Lummus Asbestos PI Trust's offer is required, a claim will be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates arbitration within six months after the claimant's receipt of notice of the Lummus Asbestos PI Trust's offer of payment or rejection of the claim. Upon written request and good cause, the Lummus Asbestos PI Trust may extend this period for up to an additional six months.

**6.4 Filing Requirements and Fees**. The Trustee shall have the discretion to determine, with the consent of the TAC and the Lummus FCR, (a) whether a claimant must have previously filed the claim in the tort system to be eligible to file the claim with the Lummus Asbestos PI Trust and (b) whether to require (and, if required, the amount of) any filing fee for any Lummus Asbestos PI Trust Claims.

## SECTION VII

### General Guidelines for Liquidating and Paying Claims

**7.1 Showing Required.** To establish a valid Lummus Asbestos PI Trust Claim, a claimant must meet the requirements set forth in the Lummus TDP. The Lummus Asbestos PI Trust may require the submission of x-rays, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support or verify the Lummus Asbestos PI Trust Claim and may further require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable.

**7.2 Costs Considered.** Notwithstanding any provisions of the Lummus TDP to the contrary, the Trustee shall always give appropriate consideration to the cost of investigating and uncovering invalid Lummus Asbestos PI Trust Claims so that the payment of valid Lummus Asbestos PI Trust Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting a Lummus Asbestos PI Trust Claim. The Trustee shall also have the discretion to make judgments regarding the amount of transaction costs to be expended by the Lummus Asbestos PI Trust so that valid Lummus Asbestos PI Trust Claims are not unduly further impaired by the costs of additional investigation. Nothing herein shall prevent the Trustee, in appropriate circumstances, from contesting the validity of any claim against the Lummus Asbestos PI Trust whatever the costs, or to decline to accept medical evidence from sources that the Trustee have determined to be unreliable pursuant to the Claims Audit Program described in Section 5.6.

**7.3 Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.** Consistent with the provisions hereof and subject to the FIFO Processing and Payment Queues, the Maximum Annual Payment, the Payment Percentage, the and the Claims Payment Ratio requirements set forth herein, the Trustee shall proceed as quickly as practicable to process and determine Lummus Asbestos PI Trust Claims, and shall make payments to holders of TDP Determined Lummus Asbestos PI Trust Claims in accordance with the Lummus TDP promptly as funds become available (and, if applicable, as such claims are liquidated hereunder), while maintaining sufficient resources to pay future valid TDP Determined Lummus Asbestos PI Trust Claims in substantially the same manner, and to reserve for future Trust Expenses.

## PLAN EXHIBIT E — LUMMUS TDP

Because the Lummus Asbestos PI Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, such decisions may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants. However, the Trustee shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Trustee, the purposes of the Lummus Asbestos PI Trust, the established allocation of funds to Category A Claims and Category B Claims, and the practical limitations imposed by the inability to predict the future with precision.

In the event that the Lummus Asbestos PI Trust faces temporary periods of limited liquidity, the Trustee may, with the consent of the TAC and the Lummus FCR, suspend the normal order of payment and may temporarily limit or suspend payments altogether, and may offer a Reduced Payment Option.

**7.4 Punitive Damages.** In determining the value of any Lummus Asbestos PI Trust Claim, punitive or exemplary damages, i.e., damages other than compensatory damages, shall not be considered or allowed, notwithstanding the availability of such punitive or exemplary damages in the tort system.

In the event a personal representative or authorized agent makes a claim to the Lummus Asbestos PI Trust arising under the Alabama Wrongful Death Statute and the Claimant's Jurisdiction, as otherwise defined herein, would be the State of Alabama, then for purposes of evaluated said claim against the Lummus Asbestos PI Trust it shall treat the Claimant's Jurisdiction as being the Commonwealth of Pennsylvania, and said claimant's damages shall be evaluated by the Lummus Asbestos PI Trust pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles or the provisions of 5.2(b)(2) defining Claimant's Jurisdiction.

**7.5 Interest.**

**7.5(a) In General.** Except for a TDP Determined Lummus Asbestos PI Trust Claim involving Other Asbestos Disease (Disease Level I—Cash Discount Payment) which is not entitled to interest under any circumstances, interest shall accrue and be paid on all TDP Determined Lummus Asbestos PI Trust Claims as and to the extent provided in this Section 7.5(a) and in Section 7.5(b) or 7.5(c), as applicable, provided, however, that no claimant shall receive interest for a period in excess of seven (7) years. The applicable interest rate for Lummus Asbestos PI Trust Claims entitled to interest under Section 7.5(b) or 7.5(c), as applicable, shall be equal to one-half the interest rate earned by the Trust on cash and cash equivalents invested in the year preceding. The interest rate shall be variable and adjusted annually but not compounded.

**7.5(b) Interest on TDP Determined Lummus Asbestos PI Trust Claims.** Interest shall accrue on the Scheduled Value (and for purposes of distribution, shall be added to such Scheduled Value) of any TDP Determined Lummus Asbestos PI Trust Claim that meets the requirements of Disease Levels I -V, VII and VIII if and only if such claim is liquidated under Expedited Review, Individual Review, or by arbitration. Interest on a TDP Determined Lummus Asbestos PI Trust Claim that meets the requirements of Disease Level VI shall be based on the Average Value of such claim. Interest on a particular TDP Determined Lummus Asbestos PI Trust Claim that has not been paid within one year after the date on which such TDP Determined Lummus Asbestos PI Trust Claim was filed with the Lummus Asbestos PI Trust shall accrue during the period beginning on the date that is one year after the date on which such TDP Determined Lummus Asbestos PI Trust Claim was filed with the Lummus Asbestos PI Trust and ending on the date of payment of the amount due under the Lummus TDP in respect of such TDP Determined Lummus Asbestos PI Trust Claim; provided, however, that notwithstanding the foregoing, (i) no such interest will begin to accrue until one (1) year after the Effective Date and (ii) interest shall cease to accrue on a TDP Determined Lummus Asbestos PI Trust Claim at the time the Lummus Asbestos PI Trust makes a good faith offer to settle such TDP Determined Lummus Asbestos PI Trust Claim; provided that if such TDP Determined Lummus Asbestos PI Trust Claim is awarded a higher amount through arbitration than the

## PLAN EXHIBIT E — LUMMUS TDP

offer made by the Lummus Asbestos PI Trust, interest on that TDP Determined Lummus Asbestos PI Trust Claim will be calculated on the full amount of that arbitration award during the entire period for which interest would have been payable pursuant to Section 7.5.

**7.6 Suits in the Tort System.** If the holder of a disputed claim disagrees with the Lummus Asbestos PI Trust's determination regarding the Disease Level of the claim, the claimant's exposure history or the liquidated value of the claim, and if the holder has first submitted the claim to non-binding arbitration as provided in Section 5.9, the holder may file a lawsuit in the Claimant's Jurisdiction. Any such lawsuit must be filed by the claimant in his or her own right and name and not as a member or representative of a class, and no such lawsuit may be consolidated with any other lawsuit. All defenses (including, with respect to the Lummus Asbestos PI Trust, all defenses which could have been asserted by Lummus) shall be available to both sides at trial; however, the Lummus Asbestos PI Trust may waive any defense and/or concede any issue of fact or law. If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim was filed, the case will be treated as a personal injury case with all personal injury damages to be considered, even if the claimant has died during the pendency of the claim.

**7.7 Payment of Judgments for Money Damages.** If and when a claimant obtains a judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the date on which the judgment becomes final. Thereafter, the claimant shall receive from the Lummus Asbestos PI Trust an initial payment (subject to the Payment Percentage, the Maximum Annual Payment, and the Claims Payment Ratio provisions set forth above) of an amount equal to one-hundred percent (100%) of the greater of (i) the Lummus Asbestos PI Trust's last offer to the claimant or (ii) the award that the claimant declined in non-binding arbitration. The claimant shall receive the balance of the judgment, if any, in five equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the Payment Percentage, the Maximum Annual Payment and the Claims Payment Ratio provisions above).

In the case of Lummus Asbestos PI Trust Claims involving Disease Levels I, II and III, the total amounts paid with respect to such claims shall not exceed the relevant Scheduled Value for such Disease Levels as set forth in Section 5.2(b)(3). In the case of claims involving a non-malignant asbestos-related disease that does not attain classification under Disease Levels I, II or III, the amount payable shall not exceed the Scheduled Value for the Disease Level most comparable to the disease proven. In the case of non-Extraordinary claims involving severe asbestosis and malignancies (Disease Levels IV – VIII), the total amounts paid with respect to such claims shall not exceed the Maximum Values for such Disease Levels set forth in Section 5.2(b)(3). In the case of Extraordinary Claims, the total amounts paid with respect to such claims shall not exceed the Maximum Extraordinary Value for such claims set forth in Section 5.3(a). Under no circumstances shall interest be paid pursuant to Section 7.5 or under otherwise applicable state law on any judgments obtained in the tort system.

**7.8 Third-Party Services.** Nothing in the Lummus TDP shall preclude the Lummus Asbestos PI Trust from contracting with another asbestos claims resolution organization to provide services to the Lummus Asbestos PI Trust so long as decisions about the categorization and liquidated value of Lummus Asbestos PI Trust Claims are based on the relevant provisions of this Lummus TDP, including the Diseases Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

**7.9 Lummus Asbestos PI Trust Disclosure of Information.** Periodically, but not less often than once a year, the Lummus Asbestos PI Trust shall make available to claimants and other interested parties, the number of claims by disease

levels that have been resolved both by individual review and by arbitration as well as by trial indicating the amounts of the awards and the averages of the awards by jurisdiction.

**7.10 Releases.** The Trustee shall have the discretion to determine the form and substance of the release to be provided to the Lummus Asbestos PI Trust. As a condition to making any payment to a claimant, the Lummus

**PLAN EXHIBIT E — LUMMUS TDP**

Asbestos PI Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law. If allowed by state law, endorsement of a check or draft for payment by or on behalf of a claimant shall constitute such a release.

**SECTION VIII**

**Miscellaneous**

**8.1 Amendments.** Except as otherwise provided herein, the Trustee may amend, modify, delete, or add to any provisions of the Lummus TDP (including, without limitation, amendments to conform the Lummus TDP to advances in scientific or medical knowledge or other changes in circumstances), provided they first obtain the consent of the TAC and the Lummus FCR pursuant to the consent process set forth in Sections 6.6 and 7.7 of the Lummus Asbestos PI Trust Agreement, except that amendments to the Claims Payment Ratio are governed by the restrictions in Section 2.5, and adjustments to and amendments of the Payment Percentage are governed by Section 4.2.

**8.2 Severability.** Should any provision contained in the Lummus TDP be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Lummus TDP. Should any provision contained in the Lummus TDP be determined to be inconsistent with or contrary to Lummus' obligations to any insurance company providing insurance coverage to Lummus in respect of claims for personal injury based on Lummus Exposure, no payment shall be made by the Lummus Asbestos PI Trust in respect of any such claim from proceeds from said insurance coverage.

**8.3 Governing Law.** Except for purposes of determining the liquidated value of any Lummus Asbestos PI Trust Claim, administration of the Lummus TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware. The law governing the liquidation of Lummus Asbestos PI Trust Claims in the case of Individual Review, arbitration or litigation in the tort system shall be the law of the Claimant's Jurisdiction as described in Section 5.2(b)(2). Any reference to the tort system herein shall refer to the United States tort system.

**PLAN EXHIBIT E — LUMMUS TDP**

**PLAN EXHIBIT F**

**SUBJECT LUMMUS INSURANCE POLICIES**

*SUBJECT LUMMUS INSURANCE POLICIES*

| | | | |
|---|---|---|---|
| London Market | K16323 | 01/01/53 | 01/01/54 |
| London Market | K23217 | 01/01/54 | 01/01/55 |
| London Market | K31004 | 01/01/55 | 01/01/56 |
| London Market | K31004 | 01/01/56 | 01/01/57 |
| London Market | K31004 | 01/01/57 | 01/01/58 |
| London Market | CK2446 | 01/01/58 | 01/01/59 |
| London Market | CK2446 | 01/01/59 | 01/01/60 |
| London Market | CK2446 | 01/01/60 | 01/01/61 |
| London Market | K23218 | 01/01/54 | 01/01/55 |
| London Market | K31005 | 01/01/55 | 01/01/56 |
| London Market | K31005 | 01/01/56 | 01/01/57 |
| London Market | K31005 | 01/01/57 | 01/01/58 |
| London Market | K16324 | 01/01/53 | 01/01/54 |
| London Market | K23219 | 01/01/54 | 01/01/55 |
| London Market | K31006 | 01/01/55 | 01/01/56 |
| London Market | K31006 | 01/01/56 | 01/01/57 |
| London Market | K31006 | 01/01/57 | 01/01/58 |
| London Market | CK2447 | 01/01/58 | 01/01/59 |
| London Market | CK2447 | 01/01/59 | 01/01/60 |
| London Market | CK2447 | 01/01/60 | 01/01/61 |
| London Market | K10763 | 01/01/52 | 01/01/53 |
| London Market | K23220 | 01/01/54 | 01/01/55 |
| London Market | K31007 | 01/01/55 | 01/01/56 |
| London Market | K31007 | 01/01/56 | 01/01/57 |
| London Market | K31007 | 01/01/57 | 01/01/58 |
| London Market | K66620 | 01/01/61 | 01/01/62 |
| London Market | K66620 | 01/01/62 | 01/01/63 |
| London Market | K23221 | 04/12/53 | 01/01/54 |
| London Market | K23221 | 01/01/54 | 01/01/55 |
| London Market | K31008 | 01/01/55 | 01/01/56 |
| London Market | K31008 | 01/01/56 | 01/01/57 |
| London Market | K31008 | 01/01/57 | 01/01/58 |
| London Market | K49518 | 01/01/58 | 01/01/59 |
| London Market | K49518 | 01/01/59 | 01/01/60 |
| London Market | K49518 | 01/01/60 | 01/01/61 |
| London Market | K31009 | 01/01/55 | 01/01/56 |
| London Market | K31009 | 01/01/56 | 01/01/57 |
| London Market | K31009 | 01/01/57 | 01/01/58 |
| London Market | K49519 | 01/01/58 | 01/01/59 |
| London Market | K49519 | 01/01/59 | 01/01/60 |
| London Market | K49519 | 01/01/60 | 01/01/61 |
| London Market | K35897 | 12/22/55 | 01/01/56 |
| London Market | K35897 | 01/01/56 | 01/01/57 |
| London Market | K35897 | 01/01/57 | 01/01/58 |
| London Market | K49520 | 01/01/58 | 01/01/59 |
| London Market | K49520 | 01/01/59 | 01/01/60 |
| London Market | K49520 | 01/01/60 | 01/01/61 |
| London Market | K46966 | 01/01/58 | 01/01/59 |
| London Market | K46966 | 01/01/59 | 01/01/60 |
| London Market | K46966 | 01/01/60 | 01/01/61 |

**PLAN EXHIBIT F — SUBJECT LUMMUS INSURANCE POLICIES**

## PLAN EXHIBIT G

### SUBJECT LUMMUS INSURANCE
### SETTLEMENT AGREEMENTS

## SUBJECT LUMMUS INSURANCE SETTLEMENT AGREEMENTS

None as of August 30, 2005. To be updated as necessary and appropriate.


**PLAN EXHIBIT G — SUBJECT LUMMUS INSURANCE SETTLEMENT AGREEMENTS**

**PLAN EXHIBIT H**

**LIST OF HOLDERS OF SETTLED**
**ASBESTOS CLAIMS**

| Law Firm | Juris | Claimant |
|---|---|---|
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA1 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | |
| BRAYTON, PURCELL | CA2 | [Redacted—List of names |
| BRAYTON, PURCELL | CA2 | to be provided to the |
| BRAYTON, PURCELL | CA2 | Court on or before the |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | Lummus Confirmation Date |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | and filed under seal] |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | |
| ROBINS, CLOUD AND LUBEL, LLP | TX3 | |
| SIEBEN, POLK, LAVERDIERE, JONES | MN1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|----------|-------|----------|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|----------|-------|----------|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |

| Law Firm | Juris | Claimant |
|----------|-------|----------|
| WILENTZ, GOLDMAN, SPITZER | NJ1 | [Redacted—List of names to be provided to the Court on or before the Lummus Confirmation Date and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |

| Law Firm | Juris | Claimant |
|----------|-------|----------|
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | [Redacted—List of names to be provided to the Court on or before the Lummus Confirmation Date and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| **Law Firm** | **Juris** | **Claimant** |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NJ1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

WILENTZ, GOLDMAN, SPITZER    NY1
WILENTZ, GOLDMAN, SPITZER    NY1
WILENTZ, GOLDMAN, SPITZER    NY1
WILENTZ, GOLDMAN, SPITZER    NY1
WILENTZ, GOLDMAN, SPITZER    NY1

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| | | |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|----------|-------|----------|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

304

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| | |
|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |
| WILENTZ, GOLDMAN, SPITZER | NY1 |

[Redacted—List of names
to be provided to the
Court on or before the
Lummus Confirmation Date
and filed under seal]

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

| Law Firm | Juris | Claimant |
|---|---|---|
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | [Redacted—List of names |
| WILENTZ, GOLDMAN, SPITZER | NY1 | to be provided to the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Court on or before the |
| WILENTZ, GOLDMAN, SPITZER | NY1 | Lummus Confirmation Date |
| WILENTZ, GOLDMAN, SPITZER | NY1 | and filed under seal] |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |
| WILENTZ, GOLDMAN, SPITZER | NY1 | |

**Exhibit C**
**to Disclosure Statement**

**Former Names Used by the Debtor and the Names of Entities Now**
**Dissolved or Merged into the Debtor**

| Debtor | Former Names Used By the Referenced Debtor And the Names Of Entities Now Dissolved Or Merged Into the Debtor |
|---|---|
| ABB Lummus Global Inc. | The Lummus Company<br>Lummus Crest Inc.<br>ABB Lummus Crest Inc.<br>ABB Lummus Global Construction Co. |

**Exhibit D**
**to Disclosure Statement**

**Curriculum Vitae of Richard B. Schiro, the Lummus Future Claimants' Representative**

Richard B. Schiro
Law Offices of Richard B. Schiro
3710 Rawlins Street
Suite 1350
Dallas, Texas 75219
(214) 521-4994 (telephone)
(214) 521-3838 (facsimile)
**rbschiro@schirolaw.com**

1988 to present:  Private law practice specializing in state and Federal commercial litigation, real estate and corporate transactional work, and business bankruptcy (both creditor and debtor). In addition, appointment as legal representative of future claimants in:

- Swan Transportation Company, Case No. 01-11690-JKF, United States Bankruptcy Court for the District of Delaware.

- JT Thorpe Company, Case No. 02-41487-H5-11, United States Bankruptcy Court for the Southern District of Texas, Houston Division.

- Utex Industries, Inc., Case No. 04-34427-H4-11, United States Bankruptcy Court for the Southern District of Texas, Houston Division.

1987-1992:  Active member of panel of trustees, United States Bankruptcy Court, Northern District of Texas (Dallas Division).

1981-1988:  Private business.

1977-1981:  Law professor, Southern Methodist University School of Law.

1973-1977:  Faculty member, Law Department, Wharton School, University of Pennsylvania.

1970-1973:  Private law practice specializing in commercial real estate transactions.

1968-1970:  VISTA Lawyer and Reginald Heber Smith Fellow.

Publications:
(i)    *Commercial Speech: The Demise Of A Chimera, The Supreme Court Review 45 (1976).*
(ii)   *Prospecting For Lost Profits In The Uniform Commercial Code: The Buyer's Dilemmas, 22 Southern California Law Review 6 (1979).*
(iii)  *Diversity In Television's Speech: Balancing Programs In The Eyes Of The Viewer, 27 Case Western Reserve Law Review 1 (Fall 1976).*

Education:  University of Chicago Law School, J.D. 1968
Fulbright Scholar, India 1964-65
Trinity College (CT), B.A. 1964

Member of the   Arkansas (1969)
Bar:   Pennsylvania (1971)
Texas (1981)

**Exhibit E**
to Disclosure Statement

**Biographical Data on Proposed Directors and Executive
Officers of the Reorganized Debtor**

**Samir Brikho — President and Chief Executive Officer, ABB Lummus Global Inc.** Samir began his career at ABB in 1983 serving as a project sales manager for gas turbines in the Middle East. During his tenure at ABB, he has advanced from project sales management positions to senior executive management positions within the ABB corporate framework. Since 2003, Samir has served as President and Chief Executive Officer of Lummus and as head of ABB's Oil, Gas, and Petrochemicals business. Samir received a masters of science degree in thermal technology from the Royal High School of Technology in Stockholm, Sweden and has subsequently graduated from several executive management courses and the Senior Executive Programme at Stanford.

**Jürg Seiler — Senior Vice President, Treasurer, and Chief Financial Officer, ABB Lummus Global Inc.** Jürg began his career at ABB in 1981 as Assistant Controller of Brown Boveri International. Since that time, he has advanced within the ABB corporate organizational structure assuming responsibility in auditing, controller, and financial officer positions. Since 2003, Jürg has served as the Senior Vice President and Chief Financial Officer of Lummus. Jürg graduated from the University of St. Gallen with a Licentiate of Business Administration and Economics.

**Khalid Farid — Executive Vice President, Strategic Business Development, ABB Lummus Global Inc.** Khalid began his career at Lummus in 1966 as a process engineer. Since then, he has progressed to senior positions of responsibility for both the Lummus EPC and Lummus Technology operations. Currently, Khalid serves as Executive Vice President, responsible for strategic business development for Lummus' overall business. Khalid received a master's degree in chemical engineering from New York University. He is a member of the American Institute of Chemical Engineers.

**Daniel Martin McCarthy — Senior Vice President and General Manager, Technology Division, ABB Lummus Global Inc.** Dan oversees the Lummus technology business. The technology division is responsible for all process licensing activities within Lummus, as well as the supply of specialty heat exchange equipment. The technology division has the following three technology joint ventures: Chevron Lummus Global (with Chevron Texaco), CDTECH (with Chemical Research and Licensing) and Novolen Technology Holdings CV (with Equistar). Dan has been involved in technology licensing general management since 1993. Prior to 1993, he was involved in Lummus marketing and licensing. Dan received a master's degree in chemical engineering from Manhattan College, and an MBA from Pace University.

**Ronald D. Dawson — Senior Vice President, Human Resources and Health, Safety, and Environmental, ABB Lummus Global Inc.** Ron joined Lummus in 1974 as an employment representative and EEO coordinator. His responsibilities expanded to include compensation, employee/labor relations, and health, safety, and environmental. In 1985, Ron became the director of EEO/Recruitment for Combustion Engineering. Two years later, Ron was appointed Director of Headquarters Human Resources for Combustion Engineering. In 1989, Ron returned to Lummus as the Vice President, Human Resources. In 1998, health, safety, and environmental was added to his responsibilities. In 2000, Ron became the Senior Vice President, Human Resources for the ABB Oil, Gas and Petrochemicals Division, in addition to his ongoing responsibilities with Lummus. Ron graduated from the University of Pennsylvania with a bachelor's degree in history. He is a member of the Vice Presidents Chapter of the Society for Human Resource Management (SHRM) and the Construction Personnel Executive Group (CPEG).

**Margaret Duplantier — Senior Vice President, General Counsel, Secretary, and Export Control Administrator, ABB Lummus Global Inc.** Margaret joined Lummus in 1992 as the assistant division counsel for Houston. Thereafter, Margaret became the Vice President General Counsel. In this role, Margaret leads the company's worldwide legal activities and export control, and participates in the overall guidance of the business worldwide. Prior to joining Lummus, Margaret spent a total of 12 years with Santa Fe International and American Ref-Fuel. Margaret received a bachelor's degree in philosophy from Newcomb College of Tulane University and subsequently received a juris doctorate degree from Tulane Law School. Margaret is licensed to practice law in California, Texas, Louisiana, and the District of Columbia.

**Michael J. Ford — Vice President and Controller, ABB Lummus Global Inc.** Mike joined Lummus in 1975 as a budget analyst. He spent four years in The Netherlands as Controller of the Dutch EPC office. In 1996, Mike was appointed Vice President and Controller, responsible for the worldwide accounting, systems, and treasury for Lummus. Prior to joining Lummus, Mike worked for General Electric in a number of financial positions, and graduated from GE's Financial Management Program. Mike received a bachelor's degree of business administration in accounting from Pace University.

**Debra Leary — Director of Tax, Houston EPC Division of ABB Lummus Global Inc.** Debbie joined Lummus in early 2004 to serve as Director of Tax. In this position, she is responsible for corporate U.S. taxes and also oversees some of the foreign offices' tax departments. Prior to joining Lummus, Debbie served in a Big Eight accounting firm and several large multinational corporations. She graduated from the University of Michigan with an MBA and subsequently received her master of science degree in taxation from De Paul University. She is a member of the Tax Executives Institute and American Institute of Certified Public Accountants.

**Michael Blaney — Vice President, Division General Counsel, Technology Division, ABB Lummus Global Inc.**
Mike joined Lummus in 1981 as an attorney. Mike has expertise in the areas of international and domestic contracts and licenses, joint ventures, merger/acquisitions/divestitures, litigation management, and corporate and government compliance programs. In his current role, Mike serves as Assistant General Counsel for Lummus, as well as General Counsel for BU Technology. Prior to joining Lummus, Mike served with Bell Laboratories and the Hudson County Prosecutor's office. Mike graduated from Holy Cross College with a bachelor's degree in English, and subsequently earned his juris doctorate degree from Seton Hall University. He was admitted to the New Jersey Bar in 1980 and is a member of the American Corporate Counsel Association.

**Curtis Culver — Vice President, Regional General Counsel, Houston EPC Division of ABB Lummus Global Inc.**
Curtis joined Lummus in 2000 as Vice President and Regional General Counsel for the Houston office. He is responsible for overall management of legal matters affecting all Houston based operations, including contract review, drafting and negotiations, litigation and arbitration management, claims administration, and general legal advise and counsel. Prior to joining Lummus, Curtis served as Assistant General Counsel for the Fluor Corporation. Curtis earned both a bachelor's degree in business administration and juris doctorate degree from the University of Arkansas. He is licensed to practice law in Texas, Oklahoma, Arkansas, and South Carolina.

**Exhibit F**
**to Disclosure Statement**

**Debtor's Liquidation Analysis**

## ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES

**CHAPTER 7 LIQUIDATION**
*($ in millions)*

| | Note | Chapter 7 Liquidation | |
| --- | :---: | ---: | ---: |
| | | Low | High |
| **Calculation of Estimated Net Proceeds Available for Allocation** | | | |
| Estimated Value of Debtor and Subsidiaries | 1 | $  300.0 | $  350.0 |
| Less: Discount Factor | | (150.0) | (175.0) |
| Estimated Proceeds from Sale of Businesses | | 150.0 | 175.0 |
| Plus Other Assets: | | | |
| Insurance Recovery | 2 | 0 | 7.5 |
| Estimated Net Proceeds Available for Allocation | | 150.0 | 182.5 |
| **Allocation of Estimated Net Proceeds to Secured, Administrative and Priority Claims** | | | |
| Costs Associated with Chapter 7 Liquidation | 3 | (7.9) | (8.7) |
| Other Administrative Claims | 3 | (1.0) | (1.0) |
| Estimated Net Proceeds Available | | 141.2 | 172.9 |
| **Allocation of Estimated Net Proceeds** | | | |
| Intercompany Indebtedness | | (505.0) | (505.0) |
| Accrued Obligations | 4 | (30.0) | 0 |
| Assumed Lummus Asbestos PI Trust Claims | 5 | (38.0) | (38.0) |
| | | (573.0) | (543.0) |
| **Excess/Shortfall** | | ($  431.9) | ($  370.2) |
| Recovery to Holders of General Unsecured Claims | | 24.6% | 31.8% |

## Liquidation Analysis

The Bankruptcy Code requires that each holder of an impaired claim or equity interest either (1) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code (the "Best Interest Test"). **The analysis, including the Estimated Value of the Debtor and its Subsidiaries and the Estimated Proceeds from Sale of Businesses (as used herein), was prepared solely to assist in the determination of the Best Interest Test and should not be used or relied upon for any other purpose.**

The analysis assumes a hypothetical Chapter 7 liquidation is commenced on April 1, 2006. The analysis assumes the liquidation of the Debtor and its subsidiaries is effected through the orderly sales of the businesses as going concerns. Because the Lummus Asbestos PT Channeling Injunction would not be available in a Chapter 7 liquidation, the values realized from the orderly sale of the businesses would in all likelihood be reduced as a result of buyers' concerns regarding the risk of asbestos liability in the acquisition of assets. Further the lack of an Asbestos PT Channeling Injunction may preclude the orderly sale of the businesses as going concerns, in which case an actual liquidation of the assets would be required. The Debtor believes that the value of its businesses as going concerns, realizable through the cash flow generated by the businesses exceeds the value of its component assets. If an actual liquidation of the assets occurred, values realized would be further reduced and claims against the estate increased.

The net proceeds resulting from the disposition of the businesses of the Debtor and any available cash would be available first to pay the costs and expenses of liquidation and to satisfy any additional administrative and priority claims that might arise from the Debtor's liquidation under Chapter 7.

The Debtor's costs of liquidation under Chapter 7 would include fees payable to a Chapter 7 trustee and other professionals retained by the trustee including attorneys, financial advisors, and accountants, asset disposition expenses, litigation costs related to the resolution of asbestos and other claims, other expenses incurred in the Chapter 11 case allowed in the Chapter 7 case, and claims arising from the operations of the Debtor during the Chapter 11 case.

Any remaining net proceeds would be allocated to creditors in strict priority pursuant to the Bankruptcy Code and thereafter available for distribution to shareholders.

After consideration of the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors, the Debtor believes that confirmation of the Plan will provide each holder of an impaired claim that has not accepted the Plan with an amount that is not less than such holder would receive pursuant to the liquidation of the Debtor under Chapter 7.

**The liquidation analysis is based on the Debtor's Projections and a number of estimates and assumptions described below. Although developed and considered reasonable by the management of the Debtor, the Projections, estimates and assumptions are subject to significant economic, business, and competitive uncertainties and contingencies beyond the control of the Debtor and of its management. There can by no assurance that the values reflected in this liquidation analysis would be realized if the Debtor were in fact to undergo such a liquidation and actual results could vary materially and adversely from those contained herein. Accordingly, while the analysis is necessarily presented with numerical specificity, the actual liquidation value of the Debtor and net proceeds available to creditors may vary from that considered herein and such variations may be material.**

## Assumption Footnotes to the Liquidation Analysis

1.  In a Chapter 7 liquidation, it is assumed the businesses of the Debtor and its subsidiaries would be sold as going concerns for cash to one or more buyers. The proceeds from the sale of the businesses are assumed to be equal to the fair market value of the businesses, based on the Debtor's Projections, less a discount factor. Unlike a Chapter 11 reorganization, Chapter 7 does not provide for the issuance of the Lummus Asbestos P1 Channeling Injunction. Notwithstanding a presumed ability to sell assets in a sale under Bankruptcy Code Section 363 or the availability of an injunction under Bankruptcy Code 105, the discount factor quantifies the probability that the businesses could not be sold for fair value or at all because of the perceived risk that the asbestos liability would follow the assets sold. Further, the sale of businesses would take place on an accelerated basis with the attended time pressure and adverse publicity and sold "as is" without representations and warranties, resulting in substantial discounts to any going concern valuation.

2.  The Chapter 11 Plan of Reorganization provides for the payment of the Insurance Recovery Guaranteed Payment. In a Chapter 7 liquidation, it is assumed that provision will not be in effect. To the extent that Insurance Recoveries do not

aggregate $5 million, this asset will not be available in the Chapter 7 liquidation, as reflected in the Low Case. The High Case reflects the instance whereby insurance recoveries equal $7.5 million.

3.  Costs associated with a Chapter 7 liquidation are assumed to include trustee fees estimated at 3% of the value of the assets, brokerage fees for the sales of the businesses, and professional fees for legal, financial, and claims processing advisors. Other administrative costs reflect an estimate of allowed administrative costs incurred in the Chapter 11 proceeding and unpaid as of the date of the Chapter 7 liquidation. For purposes of this analysis, it is assumed that all professional fee holdbacks in the Chapter 11 have been paid prior to the commencement of the Chapter 7 liquidation.

4.  The analysis generally assumes the pre-payment of accrued pre-petition debts owed to ordinary course creditors and the payment of Claims in Class 1, Class 2, Class 3, and Class 4 as they come due prior to the Effective Date as reflected in the High Case. In the Low Case, it is conservatively estimated that ten percent of certain accrued obligations have not been paid in the ordinary course and are not otherwise assumed by the buyer.

5.  For purposes of this analysis, Lummus Asbestos PT Trust Claims are assumed equal the sum of the Lummus Note and the Insurance Recovery Guaranteed Payment.

**Exhibit G**
**to Disclosure Statement**

**Debtor's Financial Statements for**
**the year ended December 31, 2004**

## ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES

## INCOME STATEMENT

| ($000's) | | Fiscal Year Ending December 31, 2004 |
|---|---|---:|
| Total revenues | $ | 415,228 |
| Cost of sales | | (389,772) |
| Gross profit | | 25,456 |
| ABB Group internal fees | | 10,382 |
| R&D, Selling, general and administrative expenses | | (81,104) |
| | | (70,722) |
| Income before taxes from equity accounted companies | | 9,096 |
| Other Expenses | | (2,808) |
| Restructuring costs | | (18,804) |
| Earnings before interest and taxes | | (57,782) |
| Interest Income/Expense | | (19,192) |
| | | 1,010 |
| Earnings before taxes | | (75,964) |
| Taxes | | (8,044) |
| **Net income** | $ | **(84,008)** |

## ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES

### BALANCE SHEET

### AT DECEMBER 31, 2004

*($000s)*

**ASSETS**

| | | |
|---|---|---:|
| Cash and equivalents | $ | 26,357 |
| Trade receivables | | 103,785 |
| Non-trade receivables | | 56,161 |
| Sales in excess of invoices | | 112,075 |
| Work in process | | 57,469 |
| Prepaid expenses/accrued income | | (1,781) |
| **Total Current Assets** | $ | 354,065 |
| **Non-Current Assets** | | |
| Machinery and equipment — net of depreciation | | 6,738 |
| Deferred taxes — non-current assets | | (2,114) |
| Goodwill | | 80,651 |
| Investments and Other | | 78,501 |
| Capitalized software — net of depreciation | | 3,841 |
| **Total Non-Current Assets** | $ | 167,617 |
| **TOTAL ASSETS** | $ | 521,682 |

**LIABILITIES & EQUITY**

| | | |
|---|---|---:|
| **Current Liabilities** | | |
| Trade payables | $ | 77,706 |
| Invoices to come (trade) | | 205,192 |
| Billings in excess of sales | | 25,559 |
| Non-trade payables | | 43,091 |
| Provisions related to asbestos | | 32,981 |
| Other provisions | | 14,238 |
| Income taxes due | | (9,910) |
| Accrued expenses | | 30,998 |
| Short-term borrowings | | 360,182 |
| **Total Current Liabilities** | $ | 780,038 |
| **Non-Current Liabilities** | | 7,347 |
| **Total Liabilities** | | 787,385 |
| **Total Stockholders' Equity** | | (265,703) |
| **TOTAL LIABILITIES & EQUITY** | $ | 521,682 |

**Exhibit H**
**to Disclosure Statement**

**Debtor's Financial Projections**

**ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES**
**INCOME STATEMENT**
*($ in millions)*

| | Pre Petition Period | | | | Chapter 11 Period | | |
| | 2004 | 2005 | | | | | 2006 |
| | Year | Q1 Act | Q2 Est | Q3 Est | Q4 Est | Year | Q1 Est |
|---|---|---|---|---|---|---|---|
| Booked | $ 415 | $ 54 | $ 61 | $ 77 | $ 113 | $ 305 | $ 35 |
| Booked % of Revenue | 100.0% | 100.0% | 70.1% | 70.6% | 70.6% | 74.4% | 28.5% |
| Unbooked | — | — | 26 | 32 | 47 | $ 105 | 88 |
| Revenue | $ 415 | $ 54 | $ 87 | $ 109 | $ 160 | $ 410 | $ 123 |
| % Growth Y-o-Y | | | | | | (1.2%) | |
| Cost of Sales | (390) | (38) | (70) | (88) | (143) | (339) | (105 |
| Gross Profit | $ 25 | $ 16 | $ 17 | $ 21 | $ 17 | $ 71 | $ 18 |
| Gross Profit % | 6.0% | 29.6% | 19.5% | 19.3% | 10.6% | 17.3% | 14.6% |
| Selling, General and Administrative | (60) | (7) | (13) | (12) | (10) | (42) | (10) |
| ABB Fees | (10) | (2) | (1) | (1) | (1) | (5) | (1) |
| Equity Income | 9 | 1 | 4 | 2 | 6 | 13 | 3 |
| Other Income/Expense[1] | (22) | 2 | (1) | — | — | 1 | — |
| Earnings Before Interest and Taxes | $ (58) | $ 10 | $ 6 | $ 10 | $ 12 | $ 38 | $ 10 |
| Interest Expense | (19) | (4) | (7) | (10) | — | (21) | — |
| Note Amortization | — | — | — | — | — | — | — |
| Restructuring Expense | — | — | — | (4) | (2) | (6) | (3) |
| Taxes | (8) | (3) | (2) | (2) | (2) | (8) | (2) |
| Other[2] | 1 | — | — | — | — | — | — |
| Net Income | $ (84) | $ 3 | $ (3) | $ (6) | $ 8 | $ 3 | $ 5 |
| SG&A % of Revenue | 14.6% | | | | | 10.2% | |
| EBIT % of Revenue | (14.1) | | | | | 9.3% | |

Notes:

(1) Includes corporate restructuring expenses of $18 million.
(2) Includes financial profit/loss relating to foreign exchange rate difference.

**ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES**
**INCOME STATEMENT**
*($ in millions)*

| | Post Effective Date Period | | | | | | | | | | |
| | 2006 | | | | 2007 | | | | | 2008 | 2009 |
| | Q2 Est | Q3 Est | Q4 Est | Year | Q1 Est | Q2 Est | Q3 Est | Q4 Est | Year | Year | Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Booked | $ 35 | $ 37 | $ 36 | $ 143 | — | — | — | — | — | — | — |
| Booked % of Revenue | 28.5% | 28.9% | 28.6% | 28.6% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0 |
| Unbooked | 88 | 91 | 90 | 357 | $ 133 | $ 133 | $ 134 | $ 132 | $ 532 | $ 593 | $ 649 |
| Revenue | $ 123 | $ 128 | $ 126 | $ 500 | $ 133 | $ 133 | $ 134 | $ 132 | $ 532 | $ 593 | $ 649 |
| % Growth Y-o-Y | | | | 22.0% | | | | | 6.4% | 11.5% | 9.4 |
| Cost of Sales | (108) | (107) | (106) | (426) | (113) | (113) | (114) | (112) | (452) | (505) | (556 |
| Gross Profit | $ 15 | $ 21 | $ 20 | $ 74 | $ 20 | $ 20 | $ 20 | $ 20 | $ 80 | $ 88 | $ 93 |
| Gross Profit % | 12.2% | 16.4% | 15.9% | 14.8% | 15.0% | 15.0% | 14.9% | 15.2% | 15.0% | 14.8% | 14.3 |
| Selling, General and Administrative | (10) | (10) | (10) | (40) | (11) | (10) | (11) | (10) | (42) | (45) | (46 |
| ABB Fees | (1) | (1) | (2) | (5) | (1) | (1) | (1) | (2) | (5) | (5) | (5 |

| quity Income | 5 | 4 | 4 | 16 | 4 | 5 | 4 | 4 | 17 | 18 | 19 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ther Income/Expense(1) | — | — | — | — | — | — | — | — | — | — | — |
| arnings Before Interest and Taxes | $ 9 | $ 14 | $ 12 | $ 45 | $ 12 | $ 14 | $ 12 | $ 12 | $ 50 | $ 56 | $ 61 |
| terest Expense | (1) | (1) | (1) | (3) | (1) | (1) | (1) | (0) | (3) | (1) | (1 |
| ote Amortization | — | — | — | — | — | — | — | — | — | — | |
| estructuring Expense | (1) | — | — | (4) | — | — | — | — | — | — | |
| axes | (2) | (2) | (2) | (8) | (2) | (2) | (2) | (2) | (8) | (8) | (8 |
| ther(2) | — | — | — | — | — | — | — | — | — | — | — |
| et Income | $ 5 | $ 11 | $ 9 | $ 30 | $ 9 | $ 11 | $ 9 | $ 10 | $ 39 | $ 47 | $ 52 |
| 3&A % of Revenue | | | | 8.0% | | | | | 7.9% | 7.6% | 7.1 |
| 3IT % of Revenue | | | | 9.0% | | | | | 9.4% | 9.4% | 9.4 |

Notes

(1) Includes corporate restructuring expenses of $18 million
(2) Includes financial profit/loss relating to foreign exchange rate difference.

**ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES**
**BALANCE SHEET**
*($ in millions)*

| | Pre Petition Period | | | | Chapter 11 Period | | |
|---|---|---|---|---|---|---|---|
| | 2004 | 2005 | | | | | 2006 |
| | Year Act | Q1 Act | Q2 Est | Q3 Est | Q4 Est | Year | Q1 Est |
| **ASSETS** | | | | | | | |
| Cash | $ 26 | $ 19 | $ 18 | $ 17 | $ 72 | $ 72 | $ 71 |
| Accounts Receivable Trade(1) | 104 | 96 | 110 | 111 | 89 | 89 | 100 |
| Accounts Receivable Non-Trade | 56 | 82 | 99 | 97 | 98 | 98 | 91 |
| Sales in Excess | 112 | 113 | 130 | 130 | 122 | 122 | 123 |
| Work in Progress | 57 | 125 | 125 | 126 | 126 | 126 | 123 |
| Prepaid | (1) | 6 | 4 | 3 | 5 | 5 | 4 |
| Total Current Assets | $ 354 | $ 441 | $ 486 | $ 484 | $ 512 | $ 512 | $ 512 |
| Property, Plant and Equipment | 7 | 5 | 5 | 6 | 5 | 5 | 3 |
| Deferred Tax Asset | (2) | (3) | — | — | — | — | — |
| Goodwill | 81 | 79 | 79 | 79 | 79 | 79 | 79 |
| Investments and Other | 78 | 83 | 82 | 82 | 81 | 81 | 81 |
| Capitalized Software | 4 | 3 | 3 | 3 | 4 | 4 | 4 |
| Total Non-Current Assets | 168 | 167 | 169 | 170 | 169 | 169 | 167 |
| Total Assets | $ 522 | $ 608 | $ 655 | $ 654 | $ 681 | $ 681 | $ 679 |
| **LIABILITIES & EQUITY** | | | | | | | |
| Accounts Payable Trade(2) | $ 78 | $ 67 | $ 41 | $ 10 | $ 41 | $ 41 | $ 36 |
| Invoices to Come | 205 | 236 | 225 | 225 | 215 | 215 | 215 |
| Billings in Excess | 26 | 30 | 10 | 10 | 10 | 10 | 8 |
| Accounts Payable Non-Trade | 43 | 55 | 73 | 73 | 73 | 73 | 73 |
| Asbestos Provision(3) | 33 | 33 | 33 | 33 | 33 | 33 | 33 |
| Provisions | 14 | 14 | 30 | 27 | 24 | 24 | 24 |
| Accrued Expense | 30 | 23 | 23 | 23 | 23 | 23 | 23 |
| Accrued Interest | — | — | 2 | — | — | — | — |
| Accrued Professional Expense | — | — | — | — | 1 | 1 | 1 |
| Deferred Taxes | (9) | — | — | — | — | — | — |
| Advances from Customers | 1 | 11 | 10 | 10 | 10 | 10 | 10 |
| Non-Current Liabilities | 7 | 7 | 9 | 9 | 9 | 9 | 9 |
| Short-Term Borrowing(4) | 360 | 395 | 465 | 505 | 505 | 505 | 505 |
| DIP Loan | — | — | — | — | — | — | — |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Exit Facility | — | — | — | — | — | — | — |
| Lummus Promissory Note | — | — | — | — | — | — | — |
| Total Liabilities | $ 788 | $ 871 | $ 921 | $ 925 | $ 944 | $ 944 | $ 937 |
| Total Shareholder's Equity | $ (266) | $ (263) | $ (266) | $ (271) | $ (263) | $ (263) | $ (258) |
| Total Liabilities and Shareholder's Equity | $ 522 | $ 608 | $ 655 | $ 654 | $ 681 | $ 681 | $ 679 |

Notes:

(1) Reflects the collection of $22 million past due accounts receivable in the 4Q 2005.
(2) Reflects the payment $31 million accounts payable trade prior to the Petition Date.
(3) Reflects the extinguishment of the provision at the Effective Date.
(4) Reflects intercompany borrowings and the reclassification of $31 million accounts payable trade payment to the Exit Facility at the Effective Date.

## ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES
## BALANCE SHEET
*($ in millions)*

| | Post Effective Date Period | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2006 | | | | 2007 | | | | | 2008 | 2009 |
| | Q2 Est | Q3 Est | Q4 Est | Year | Q1 Est | Q2 Est | Q3 Est | Q4 Est | Year | Year | Year |
| **ASSETS** | | | | | | | | | | | |
| Cash | $ 40 | $ 25 | $ 25 | $ 25 | $ 24 | $ 24 | $ 24 | $ 23 | $ 23 | 64 | $ 108 |
| Accounts Receivable Trade(1) | 109 | 109 | 111 | 111 | 114 | 112 | 111 | 113 | 113 | 115 | 117 |
| Accounts Receivable Non-Trade | 91 | 90 | 87 | 87 | 77 | 77 | 79 | 79 | 79 | 80 | 81 |
| Sales in Excess | 127 | 128 | 126 | 126 | 123 | 124 | 100 | 99 | 99 | 99 | 97 |
| Work in Progress | 125 | 123 | 121 | 121 | 91 | 92 | 91 | 93 | 93 | 95 | 100 |
| Prepaid | 4 | 3 | 3 | 3 | 2 | 4 | 2 | 2 | 2 | — | 1 |
| Total Current Assets | $ 496 | $ 478 | $ 473 | $ 473 | $ 431 | $ 433 | $ 407 | $ 409 | $ 409 | 453 | $ 504 |
| Property, Plant and Equipment | 3 | 3 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | — | — |
| Deferred Tax Asset | — | — | — | — | — | — | — | — | — | — | — |
| Goodwill | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 | 79 |
| Investments and Other | 81 | 81 | 83 | 83 | 83 | 83 | 83 | 86 | 86 | 87 | 87 |
| Capitalized Software | 4 | 4 | 1 | 1 | 1 | 1 | 1 | — | — | — | — |
| Total Non-Current Assets | 167 | 167 | 165 | 165 | 165 | 165 | 165 | 166 | 166 | 166 | 166 |
| Total Assets | $ 663 | $ 645 | $ 638 | $ 638 | $ 596 | $ 598 | $ 572 | $ 575 | $ 575 | 619 | $ 670 |
| **LIABILITIES & EQUITY** | | | | | | | | | | | |
| Accounts Payable Trade(2) | $ 30 | $ 32 | $ 26 | $ 26 | $ 20 | $ 22 | $ 22 | $ 23 | $ 23 | 21 | $ 22 |
| Invoices to Come | 180 | 150 | 150 | 150 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Billings in Excess | 9 | 8 | 8 | 8 | 10 | 10 | 10 | 10 | 10 | 11 | 12 |
| Accounts Payable Non-Trade | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 | 73 |
| Asbestos Provision(3) | — | — | — | — | — | — | — | — | — | — | — |
| Provisions | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 | 24 |
| Accrued Expense | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 |
| Accrued Interest | 0 | 1 | — | — | 0 | 1 | 1 | — | — | — | — |
| Accrued Professional Expense | — | — | — | — | — | — | — | — | — | — | — |
| Deferred Taxes | — | — | — | — | — | — | — | — | — | — | — |
| Advances from Customers | 9 | 9 | 8 | 8 | 10 | 11 | 10 | 9 | 9 | 10 | 10 |
| Non-Current Liabilities | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 |
| Short-Term Borrowing(4) | 474 | 474 | 474 | 474 | 474 | 474 | 474 | 474 | 474 | 474 | 474 |
| DIP Loan | — | — | — | — | — | — | — | — | — | — | — |
| Exit Facility | 56 | 56 | 50 | 50 | 51 | 38 | 4 | — | — | — | — |
| Lummus Promissory Note | 28 | 28 | 26 | 26 | 26 | 26 | 26 | 24 | 24 | 21 | 19 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Total Liabilities | $ 916 | $ 887 | $ 871 | $ 871 | $ 820 | $ 811 | $ 776 | $ 769 | $ 769 | $ 766 | $ 766 |
| Total Shareholder's Equity | $ (253) | $ (242) | $ (233) | $ (233) | $ (224) | $ (213) | $ (204) | $ (194) | $ (194) | $ (148) | $ (96) |
| Total Liabilities and Shareholder's Equity | $ 663 | $ 645 | $ 638 | $ 638 | $ 596 | $ 598 | $ 572 | $ 575 | $ 575 | $ 619 | $ 670 |

Notes:

(1) Reflects the collection of $22 million past due accounts receivable in the 4Q 2005.
(2) Reflects the payment $31 million accounts payable trade prior to the Petition Date.
(3) Reflects the extinguishment of the provision at the Effective Date.
(4) Reflects intercompany borrowings and the reclassification of $31 million accounts payable trade payment to the Exit Facility at the Effective Date.

## ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES
## STATEMENT OF CASH FLOWS
*($ in millions)*

| | Pre Petition Period | | | Chapter 11 Period | | |
|---|---|---|---|---|---|---|
| | 2005 | | | | | 2006 |
| | Q1 Act | Q2 Est | Q3 Est | Q4 Est | Year | Q1 Est |
| **Cash from Operating Activities** | | | | | | |
| Net Income | $ 3 | (3) | (6) | $ 8 | $ 3 | $ 5 |
| Reversal of Depreciation and Amortization | 2 | — | — | — | 2 | — |
| Reversal of Deferred Taxes | 10 | (3) | — | — | 7 | — |
| Subtotal | 15 | (6) | (6) | 8 | 12 | 5 |
| **Change in Assets & Liabilities** | | | | | | |
| Accounts Receivable Trade | 8 | (14) | (1) | 22 | 15 | (11) |
| Accounts Receivable Non-Trade | (26) | (17) | 2 | (1) | (42) | 7 |
| Sales in Excess | (1) | (17) | — | 8 | (10) | (1) |
| Inventories | (68) | — | (1) | — | (69) | 3 |
| Prepaids | (7) | 2 | 1 | (2) | (6) | 1 |
| Accounts Payable Trade | (11) | (26) | (31) | 31 | (37) | (5) |
| Invoices to Come | 31 | (11) | — | (10) | 10 | — |
| Billings in Excess | 4 | (20) | — | — | (16) | (2) |
| Accounts Payable Non-Trade | 12 | 18 | — | — | 30 | — |
| Asbestos Provision | — | — | — | — | — | — |
| Other Provisions | — | 16 | (3) | (3) | 10 | — |
| Accrued Expense | (7) | — | — | — | (7) | — |
| Accrued Interest | — | 2 | (2) | — | — | — |
| Accrued Professional Expense | — | — | — | 1 | 1 | — |
| Advances from Customers | 10 | (1) | — | — | 9 | — |
| Non-Current Liabilities | — | 2 | — | — | 2 | — |
| Net Cash Provided by Operating Activities | (40) | (72) | (41) | 54 | (98) | (3) |
| **Cash from Investing Activities** | | | | | | |
| Net Capex/Depreciation | 3 | — | (1) | — | 2 | 2 |
| Change in Investments and Other | (5) | 1 | — | 1 | (3) | — |
| Net Cash Provided by Investing Activities | (2) | 1 | (1) | 1 | (1) | 2 |
| **Cash from Financing Activities** | | | | | | |
| Change in Short-Term Borrowing | 35 | 70 | 40 | — | 145 | — |
| Change in DIP Financing | — | — | — | — | — | — |
| Change in Exit Financing | — | — | — | — | — | — |
| Change in Lummus Note | — | — | — | — | — | — |
| Net Cash Provided by Financing Activities | 35 | 70 | 40 | — | 145 | — |
| Other[1] | — | — | — | — | — | — |

| | | | | | |
|---|---|---|---|---|---|
| Net Cash Flow | (7) | (1) | (2) | 55 | 46 | (1) |
| Beginning Cash | 26 | 19 | 18 | 17 | 26 | 72 |
| Cash Source (Use) | (7) | (1) | (2) | 55 | 46 | (1) |
| Ending Cash | $ 19 | $ 18 | $ 17 | $ 72 | $ 72 | $ 71 |

Notes:

(1) Includes financial profit/loss relating to foreign exchange rate difference and dividends paid/received.

**ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES**
**STATEMENT OF CASH FLOWS**
*($ in millions)*

| | Post Effective Date Period | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **2006** | | | | **2007** | | | | | **2008** | **2009** |
| | Q2 Est | Q3 Est | Q4 Est | Year | Q1 Est | Q2 Est | Q3 Est | Q4 Est | Year | Year | Year |
| **Cash from Operating Activities** | | | | | | | | | | | |
| Net Income | $ 5 | $ 11 | $ 9 | $ 30 | 9 | 11 | $ 9 | $ 10 | $ 39 | $ 47 | $ 52 |
| Reversal of Depreciation and Amortization | — | — | — | — | — | — | — | — | — | — | — |
| Reversal of Deferred Taxes | — | — | — | — | — | — | — | — | — | — | — |
| Subtotal | 5 | 11 | 9 | 30 | 9 | 11 | 9 | 10 | 39 | 47 | 52 |
| **Change in Assets & Liabilities** | | | | | | | | | | | |
| Accounts Receivable Trade | (9) | — | (2) | (22) | (3) | 2 | 1 | (2) | (2) | (2) | (2) |
| Accounts Receivable Non-Trade | — | 1 | 3 | 11 | 10 | — | (2) | — | 8 | (1) | (1) |
| Sales in Excess | (4) | (1) | 2 | (4) | 3 | (1) | 24 | 1 | 27 | — | 2 |
| Inventories | (2) | 2 | 2 | 5 | 30 | (1) | 1 | (2) | 28 | (2) | (5) |
| Prepaids | — | 1 | — | 2 | 1 | (2) | 2 | — | 1 | 2 | (1) |
| Accounts Payable Trade | (6) | 2 | (6) | (15) | (6) | 2 | — | 1 | (3) | (2) | 1 |
| Invoices to Come | (35) | (30) | — | (65) | (50) | — | — | — | (50) | — | — |
| Billings in Excess | 1 | (1) | — | (2) | 2 | — | — | — | 2 | 1 | 1 |
| Accounts Payable Non-Trade | — | — | — | — | — | — | — | — | — | — | — |
| Asbestos Provision | (33) | — | — | (33) | — | — | — | — | — | — | — |
| Other Provisions | — | — | — | — | — | — | — | — | — | — | — |
| Accrued Expense | — | — | — | — | — | — | — | — | — | — | — |
| Accrued Interest | 0 | 0 | (1) | — | 0 | 0 | 0 | (1) | — | — | — |
| Accrued Professional Expense | (1) | — | — | (1) | — | — | — | — | — | — | — |
| Advances from Customers | (1) | — | (1) | (2) | 2 | 1 | (1) | (1) | 1 | 1 | — |
| Non-Current Liabilities | — | — | — | — | — | — | — | — | — | — | — |
| **Net Cash Provided by Operating Activities** | (84) | (15) | 6 | (96) | (2) | 12 | 35 | 5 | 51 | 44 | 47 |
| **Cash from Investing Activities** | | | | | | | | | | | |
| Net Capex/Depreciation | — | — | 4 | 6 | — | — | — | 2 | 2 | 1 | — |
| Change in Investments and Other | — | — | (2) | (2) | — | — | — | (3) | (3) | (1) | — |
| **Net Cash Provided by Investing Activities** | — | — | 2 | 4 | — | — | — | (1) | (1) | — | — |
| **Cash from Financing Activities** | | | | | | | | | | | |
| Change in Short-Term Borrowing | (31) | — | — | (31) | — | — | — | — | — | — | — |
| Change in DIP Financing | — | — | — | — | — | — | — | — | — | — | — |
| Change in Exit Financing | 56 | (0) | (6) | 50 | 1 | (12) | (35) | (3) | (50) | (0) | (0) |
| Change in Lummus Note | 28 | — | (2) | 26 | — | — | — | (2) | (2) | (2) | (2) |
| **Net Cash Provided by Financing Activities** | 53 | (0) | (8) | 45 | 1 | (12) | (35) | (5) | (52) | (3) | (2) |
| Other[(1)] | | | | | | | | | | | |
| **Net Cash Flow** | (31) | (15) | (0) | (47) | (1) | — | — | (1) | (2) | 41 | 44 |

| Beginning Cash | 71 | 40 | 25 | 72 | 25 | 24 | 24 | 24 | 25 | 23 | 64 |
| Cash Source (Use) | (31) | (15) | (0) | (47) | (1) | — | — | (1) | (2) | 41 | 44 |
| Ending Cash | $ 40 | $ 25 | $ 25 | $ 25 | $ 24 | $ 24 | $ 24 | $ 23 | $ 23 | $ 64 | $ 108 |

Notes:

(1) Includes financial profit/loss relating to foreign exchange rate difference and dividends paid/received.

## ABB LUMMUS GLOBAL INC. AND SUBSIDIARIES

### PRO FORMA FINANCIAL INFORMATION

The following projected pro forma financial information (the "Projections") was prepared for the sole purpose of evaluating the feasibility of the proposed plan of reorganization of ABB Lummus Global Inc. (the "Debtor") and should be read in conjunction with the assumptions, qualifications, and footnotes set forth herein, the Disclosure Statement, the Plan, and related documents. The Projections were prepared using the accounting policies generally employed in the preparation of the Debtor's financial statements.

The Projections reflect operations of the Debtor and its nondebtor subsidiaries (collectively, "Lummus" or the "Company") including the estimated financial effects of the Plan and present the estimated balance sheets, income statements and cash flow statements for the fiscal years ending December 31, 2005, 2006, and 2007, quarterly, and for the fiscal year ending December 31, 2008, annually, (the "Projection Period").

The Projections were not prepared with a view toward compliance with the guidelines established by the American Institute of Certified Public Accountants, the Financial Accounting standards Board or the rules and regulations of the SEC. The Projections have not been audited or reviewed by the Debtor's independent accountants.

All estimates and assumptions underlying the Projections were developed by the management of Lummus. The assumptions disclosed herein are those that Lummus believes are significant to the understanding and evaluation of the Projections. While Lummus believes the assumptions underlying the Projections are reasonable when considered on an overall basis in light of current circumstances and expectations, such assumptions are subject to significant business, economic, and competitive uncertainties and contingencies, many of which are beyond the control of the Debtor's management. Consequently, actual results will likely vary from that shown in the Projections and the variation could be material.

While Lummus believes that the assumptions underlying the Projections are reasonable under the circumstances, no assurance is given that any of the financial results set forth in the Projections will be realized. The Projections should not be regarded as a guarantee or warranty by Lummus or any other person as to their accuracy or that the Projections will be realized.

SIGNIFICANT ASSUMPTIONS

*General*

The Projections assume a filing date of the chapter 11 petition of ABB Lummus Global Inc. of October 1, 2005 and an effective date of the Plan of April 1, 2006 (the "Effective Date").

The Projections present the accounts of the Debtor and its non-filing subsidiaries. Nondebtor joint ventures are primarily accounted for using the equity method of accounting including Catalytic Distillation Technologies (CD Tech), Chevron Lummus Global LLC, Hua Lu Engineering Co., Ltd. and Advanced Polypropylene Company. Other non debtor-joint ventures are accounted for using the proportionate consolidation method of accounting including LGOC/Snamprogetti, ABB Lummus Snamprogetti USA, Lummus/Thyssen Rheinsthal Technick, LGI/Grootint and LGL/Andromeda.

Lummus utilizes the percentage of completion method accounting for its projects. Any single or group of projects may have a significant impact on the cash flow of the Company as the sources and uses of cash are highly project specific as to the timing and amount of (i) costs incurred, (ii) billings and (iii) cash receipts. As certain large projects wind down and Lummus continues its shift in business focus from large lump sum turnkey projects to more engineering services work with reimbursable contracts, the use of cash in the early years of the Projection Period and the variability in cash flow are projected to moderate over the Projection Period.

No acquisitions or divestitures are assumed during the Projection Period.

*Business Activities*

The Company supplies proprietary technology, and project management and engineering, procurement and construction (EPC) services to the oil and gas, refining and petrochemicals industries.

In its technology business, the Process Technology Division develops, licenses, and engineers proprietary process and heat transfer technologies, systems, and catalysts used for the refining, petrochemicals and gas processing industries. These technologies are either wholly owned by Lummus or jointly owned through joint venture agreements with other catalyst companies, manufacturers or other process licensing entities. The technologies are implemented through Lummus' EPC's

operations and/or licensed directly to facility owners or to other EPC contractors employed by such facility owners. The Heat Transfer Division supplies specialized heat transfer equipment and systems to the refining and petrochemical industries, including the supply of engineering services, fired heaters and other refining and petrochemical services. (The Process Technology and Heat Transfer Divisions, collectively the "Technology Business")

The Company's EPC services include project management, front end engineering design on either a reimbursable or lump sum turnkey basis for both downstream (refineries and petrochemical facilities) and upstream ( onshore/offshore oil and gas production and processing facilities) projects and worldwide.

*Market Drivers*

The Company's markets are driven by the following factors, among others:

- the worldwide price of crude oil and associated hydrocarbons

- the condition of the oil and gas and chemical industry

- capital expenditure budgets in downstream refining and petrochemical segments

- demand growth driven by major petrochemical facilities advantaged by low cost feedstock, scale and location close to market

- more stringent environmental regulations which impact transport fuel specifications

- the increasing demand for polyolefins and polymers by new project users and per capita consumption in developing countries

- the demand for natural gas worldwide as a clean fuel

*Revenue Assumptions*

The Projections assume that the EPC division will continue its strategic shift in business focus from large lump sum turnkey engineering, procurement and construction contracts to more engineering services work of narrower scope with reimbursable contracts. The change in focus is expected to reduce the risk of exposure to losses historically incurred by the Company in certain of its project-related long term fixed price contracts and to reduce the investment in working capital. Revenue in each of the operating divisions is projected to increase over the Projection Period based on the current backlog and the Company's expectation of unbooked projects based on the market environment.

*Margin Assumptions*

Cost of sales for booked projects is calculated based on the projected cost to complete with losses recognized as incurred. Cost of sales for unbooked projects is based on the Company's historical gross margin experience by division and job type. The projected gross margin range for the EPC division is approximately 5% to 10%. The projected gross margin range for the Technology Business is approximately 25% to 35%.

Gross profit margins are projected to increase from 6.0% in 2004 to 17.3% in 2005 as a result of the winding down of existing EPC projects and associated losses, and the release of certain project-related contingencies. Gross profit margins decline approximately 3.0% from 2005 to 2008 primarily as a result of a decline in the EPC division margin due to a change in the scope of projects and risk profile of projects.

*Other Income Statement Assumptions*

Sales, general and administrative ("SG&A") expense as a percent of revenue declines from 14.6% in 2004 to 10.2% in 2005 and 8.0% in 2006 as a result of the implementation of the Step Change Program established throughout ABB Ltd to reduce overhead costs and streamline operations. SG&A expense also includes allocations from ABB affiliates for overhead related expenses such as rent, insurance and benefits.

ABB Fees represent fees in connection with license and users fees for internal computer systems, and the use of the ABB trademark.

Equity income arises from the Debtor's 50% ownership in two separate joint ventures, CD Tech and Chevron Lummus Global LLC. Equity income is projected to increase slightly over the Projection Period due to growth in the respective joint venture's markets.

Other Income/Expense included minimal restructuring costs including costs related to staff reduction expenses as the Company shifts engineering work to low cost engineering centers located worldwide.

Interest Expense includes interest expense on the Exit Facility at the assumed rate of 5.65%, payable quarterly, and on the Lummus Promissory Note at the rate of 6%, payable annually.

Income Tax Expense reflects the payment of foreign withholding taxes.

*Balance Sheet Assumptions*

Cash balances include certain non-debtor overseas bank accounts. Additionally, in instances where the Company utilizes the proportionate consolidation method of accounting for its joint venture investments, the proportionate share of the joint venture's cash balance is reflected on the balance sheet.

Non-trade accounts receivable reflect primarily a loan to ABB Lummus Global Ltda. and are offset by non-trade accounts payable on the balance sheet. Project related foreign tax receivables, claims and miscellaneous other receivables are also included in this account.

Sales in Excess of billings represent project-related costs incurred plus gross profit earned by the Debtor not yet billed.

Work in Process ("WIP") represents project-related costs incurred but not yet earned and therefore remain unrecognized as a cost in the income statement.

Prepaid Assets primarily relate to insurance premiums, deposits and travel advances.

Investments and Other represent the ABB Lummus Global Inc.'s investments in joint ventures for which the equity method accounting is used. Such investments are primarily comprised of $26 million in CD Tech and $39 million in Chevron Lurnmus Global LLC at June 30, 2005. The Projections assume that cash dividends paid to are equivalent to earnings derived from the joint ventures. Investments and Other also includes intangible assets of approximately $13 million.

The Projections assume that approximately $31 million in pre-petition accounts payable will be paid in the third quarter of 2005. Approximately $10 million of accounts payable remain unpaid as of the petition date due to timing of invoices or disputes.

Invoices to Come relates to instances where the cost from a project has been earned although not yet invoiced by the vendor.

Billings in Excess represent project-related costs incurred and gross profit not yet earned but billed.

The Projections assume that the $33 million asbestos provision will be extinguished through the establishment of the ABB Lummus Global Inc. Asbestos PI Trust at the Effective Date. Other Provisions include $9 million related to the corporate restructuring plan, $3 million related to warranties, $20 million related to an account payable and $1 million in other miscellaneous items. During 2005, the reduction in Other Provisions is related to the provision for corporate restructuring.

Accrued Expenses relate to accruals for payroll, benefits, taxes, rent and other miscellaneous items.

Advances from Customer relate to payments received from customers pursuant to contractual agreements for start up costs, vendor or subcontractor down payments or other expenses required to initiate projects.

Non Current Liabilities include the impact of FAS 106 for retiree benefits

*Impact of chapter 11 Filing and Confirmation of the Plan Assumptions*

The Projections contemplate a prepackaged Chapter 11 bankruptcy filing. However, certain risks, including without limitation, the following, exist, the likelihood of occurrence and financial impact, if any, have not been included in the Projections:

- loss of customers

- loss of suppliers or C.O.D. terms

- customers draws on letters of credit

- bank requirements for collateral on existing letters of credit

- loss of surety bonds and letter of credit capacity

Chapter 11 expenses relate to professional fees incurred as a result of the filing. These costs, estimated at $10 million during the Chapter 11 period are reflected in the Income Statement and the accrual on the Balance Sheet.

Short Term Borrowings represent intercompany borrowings owed to ABB Treasury or any Entity of the ABB Group by ABB Lummus Global Inc. and includes Pre-petition Short-Term Working Capital Financing. Such Subordinated Intercompany Indebtedness and the Pre-petition Short-Term Working Capital Financing (as defined in the ABB And Non-Debtor Affiliate Settlement Agreement (Lummus)) are treated pursuant to the terms of such agreement.

The Company has approximately $146 million in outstanding project-related letters of credit (or other form of credit support) as of July 31, 2005 guaranteed by ABB Ltd. or its affiliates. The Projections assume no drawings on these letters of credit.

The Projections assume no borrowings under the DIP Loan.

The Projections assume an Exit Facility in an amount necessary to fund the operations of the Debtor and its subsidiaries and includes an assumed amount of $31 million in pre-petition accounts payable payments.

The Projections assume the issuance of the Lummus Promissory Note to the Lummus Asbestos PI Trust at the Effective Date and a payment schedule in accordance with the terms of the Lummus Promissory Note. The asbestos provision is extinguished upon the issuance of the Lummus Promissory Note.